AMBER REFINING, INC., et al., Plaintiffs–Appellees,

v.

OCCIDENTAL OIL AND GAS CO., Defendant–Cross Claimant–Appellee,

v.

UNITED STATES DEPARTMENT OF ENERGY, Defendant–Appellant.

No. 5–130.

Temporary Emergency Court of Appeals.

Argued Nov. 12, 1991.

Decided Feb. 27, 1992.

As Amended on Denial of Rehearing April 16, 1992.

Don W. Crockett, U.S. Dept. of Energy, Washington, D.C., with whom Joseph L. Gibson, Marc Kasischke, Richard F. Ahern, and Thomas W. Sacco, of the same office, were on the briefs, for defendant-appellant U.S. Dept. of Energy.

Cecil E. Munn, Cantey & Hanger, Fort Worth, Tex., with whom H. Carter Burdette of the same firm was on the brief, for plaintiff-appellees Amber Refining, Inc., et al.

Glen E. Clover, Liddell, Sapp, Zivley, Hill & LaBoon, Houston, Tex., with whom Richard W. Staff of the same firm was on the brief, for defendant-cross claimant-appellee Occidental Oil and Gas Co. .

Before BROWN, WEIGEL,* and THORNBERRY, Judges.

WESLEY E. BROWN, Judge:

The Department of Energy ("DOE") appeals a final judgment entered against it in favor of Occidental Oil and Gas Company. The judgment arose out of an agreement between DOE and the Permian Corporation[1] which set up an escrow account to pay claims against Permian brought by third parties. The district court determined that DOE violated its agreement with Permian by unreasonably withholding approval of a settlement that Permian negotiated with Amber Refining, Inc.

### I. Facts and Procedure.

In 1979 the DOE issued a "Notice of Probable Violation" in which it alleged that Permian violated federal petroleum price and allocation regulations. The allegations related to specified transactions occurring during the period of regulation. DOE and Permian reached a settlement on these claims in 1982. The settlement agreement was embodied in a DOE "Consent Order." Pursuant to the terms of the consent order, Permian agreed to make a total payment of $21,500,000. Of that amount, $7,000,000 was paid directly to the United States Trea-

---

* Judge Weigel filed a dissenting opinion, attached hereto.

1. The Permian Corporation ("Permian") was a predecessor company of Occidental Oil and Gas Company. Occidental was substituted as a party when it took over Permian's obligations. For the sake of simplicity we will refer to both entities as "Permian" throughout this opinion.

sury. The remainder $14,500,000, was placed in an interest-bearing escrow account.

The escrow account was set up to protect Permian from "double liability," since the settlement of DOE's claims did not prevent private persons from bringing suit against Permian on the same underlying transactions. The escrow fund was therefore available to pay such claims brought by third parties against Permian in either of two situations. First, the fund was to be used to pay any final judgment in a contested action, provided Permian gave notice of the filing of the action to DOE. Second—the situation that is at issue here— the fund was to be used for amounts payable *"pursuant to any settlement negotiated by Permian and approved by the DOE, which approval shall not be unreasonably witheld."* Rec.Vol. VII at 1866. Unless there was a court order to the contrary, the remainder of the escrow fund was to be paid over to the Treasury three years after the effective date of the consent order. It was expected that at the end of this three year period any private claims not already brought against Permian would be barred by a statute of limitations.

Amber Refining, Inc. ("Amber") filed suit against Permian in 1983 in the U.S. District Court for the Northern District of Texas. The complaint contained three counts: Counts I and II alleged that Permian violated DOE regulations by selling oil to Amber in excess of the maximum allowable price under the regulations; Count III alleged that Permian breached a contractual agreement with Amber by selling oil in excess of a contractually agreed upon price. Amber sought $16 million in damages. Amber and Permian reached a settlement on these claims in late May of 1985, just before the escrow account set up to pay such claims was due to expire. The settlement agreement called for Permian to pay Amber $2.25 million out of the escrow account. The agreement was contingent upon DOE's approval of the settlement. On May 29, 1985, Amber and Permian jointly obtained an order from Judge Belew of the U.S. District Court directing the escrow agent to retain $2.25 million in the escrow account. Permian notified DOE of the settlement reached with Amber.

DOE refused to approve the Amber–Permian settlement. In response, Amber filed a motion to join DOE as a party in the Amber–Permian suit. Amber sought an order directing the DOE to show cause as to why it withheld its approval and an order releasing the funds in escrow to Amber. DOE moved to vacate the show cause order on the ground that Amber, which was not a party to the consent order, did not have standing to contest DOE's actions. DOE asked to be joined as a party, however, for the purpose of asserting a cross-claim against Permian for breach of the consent order. Rec.Vol. VII at 153. The cross-claim alleged that Permian breached the consent order by obtaining the order impounding $2.25 million of the escrow fund. DOE alleged that the settlement between Amber and Permian was not made in good faith and constituted an unlawful attempt to obtain funds belonging to the United States.[2]

At this point Permian filed a motion similar to Amber's for a show cause order and for an order directing that the Amber–Permian settlement be paid out of the escrow fund. Permian pointed out that this motion eliminated any obstacle created by DOE's assertion that Amber lacked standing. DOE opposed Permian's motion on the grounds that "it is premature and would ultimately waste the time and effort of all parties and of this Court." Rec.Vol. II at 289. DOE explained its views of the case:

> Although Permian denied all of the allegations in the complaint and asserted various affirmative defenses which, if valid, would be dispositive of this action, it has never presented these threshold legal defenses to this Court by way of a proper motion to dismiss. Since the department believes that a close examination of the defenses which Permian itself should have long ago presented will terminate this action, it is filing such a

---

**2.** DOE later abandoned its cross-claim.

motion itself herewith. If any part of the department's motion for Partial Summary Judgment is granted, the department's defensive role in this litigation will be terminated and the subject of its refusal to approve the purported settlement will be rendered moot.

*Id.* at 289–90. DOE thereby signalled its intention to step into the suit and litigate the merits of Amber's claims "on behalf of Permian." DOE followed this up with a motion for partial summary judgment in which DOE asked the court to dismiss Amber's complaint against Permian. DOE argued that the allegations in the complaint failed to state a claim and that all three counts were barred by the statute of limitations. In its response, Amber stated that "[t]he issue now before this Court is whether [the approval of DOE] is being unreasonably withheld or not. If so, the Court should order the settlement approved. If not, the Court should order the case reopened and tried." Rec.Vol. III at 363. Amber also disputed the conclusions reached by DOE in its motion for summary judgment. On July 16, 1986, Judge Belew signed an order allowing discovery to go forward on the issue of whether DOE was unreasonably withholding consent. The court indicated that an evidentiary hearing on that issue would be held following discovery. Rec.Vol. III at 384. In a hearing before the judge on July 14, 1986, both Amber and Permian argued that the issue before the court was whether DOE had unreasonably withheld approval of the settlement. DOE, on the other hand, argued that the merits of the case should be addressed:

> We believe that we have the right, in addition to rejecting approval, to enter a case as we have this case and to participate in the litigation and litigate it right to the end to protect the government's interest in this money. And that is our reading of the consent order, that we can do it either way. We are in this action, we don't want to have this settlement looked at by the Court. We are now in this action as a party. We want to have this case litigated.

Rec.Vol. III at 413. DOE filed a motion again asking the court to rule on the statute of limitations defense raised in DOE's motion for summary judgment, explaining that such a ruling would be dispositive of all the issues in the case. In response, Amber reversed course and joined in the request for the court to determine the statute of limitations issue. Amber stated that if the motion for summary judgment was denied "then perhaps the DOE will, as indicated, reconsider its refusal to approve the negotiated settlement." *Id.* at 460. Judge Belew therefore held a hearing on the DOE's motion. On January 13, 1988, Judge Belew issued a memorandum opinion in which he addressed the DOE's claim that the three counts in Amber's complaint were barred by the statute of limitations. Judge Belew concluded that the claims would be barred by the statute of limitations but that an issue of fact remained as to whether there was fraudulent concealment of the overcharges. He therefore entered an order denying the motion for summary judgment and granted a short period for discovery limited to the concealment issue. On March 7, 1988, Amber brought a motion "for declaratory relief." In this motion, Amber stated that it was waiving any claim that fraudulent concealment tolled the statute of limitations. Rec.Vol. IV at 595. Amber asked the court to declare, however, that a four-year statute of limitation applied to Count III of Amber's complaint. (The court's opinion on the statute of limitations question appeared to apply a two-year statute of limitation to all of Amber's claims.) Amber argued in its motion that a four-year period would apply to Count III of the complaint because that count alleged a state law breach of contract claim. Amber pointed out that DOE did not argue in its motion for summary judgment that Count III was barred by the statute of limitations and that the court's memorandum and opinion did not expressly address the application of the statute to that count. In response, DOE renewed its motion for summary judgment in light of the fact that no issue as to fraudulent concealment remained. At this point, it appeared that Amber's claims were going to be dismissed

on statute of limitations grounds. Consequently, Permian joined in the DOE's motion for summary judgment against Amber. Rec.Vol. IV at 779. At a hearing on the motion, the parties presented their arguments as to the statute of limitations, particularly as it applied to Count III of the complaint. *Id.* at 996.

On August 7, 1990, before the motion for summary judgment was ruled on, the case was transferred from Judge Belew to Judge John H. McBryde. Judge McBryde's view of the issues to be decided differed significantly from that of Judge Belew. On December 11, 1990, Judge McBryde gave notice that he intended to hold an evidentiary hearing on the reasonableness of DOE's withholding approval of the Amber–Permian settlement. On December 18, 1990, the court denied the DOE's outstanding motion for summary judgment on the grounds that "DOE lacks standing in this action to assert defenses on behalf of Permian and for the further reason that DOE's role in this case is limited to matters related to its withholding of approval of the settlement reached between plaintiffs and Permian." Rec.Vol. V at 1093. The court explained: "Nothing in the consent order gives DOE standing to participate on behalf of Permian, or in litigation with Permian, in presentation of defenses to claims that are made against Permian. DOE's only right in relation to litigation such as this is to exercise in a lawful manner its approval function and to defend its conduct in withholding approval." *Id.* at 1094. In the same order, Judge McBryde vacated Judge Belew's earlier memorandum opinion dealing with the statute of limitations. A hearing was set for December 20, 1990, at which time the court took up the motions of Amber and Permian for a show cause hearing and an order releasing the escrow funds. Counsel for the parties made arguments on the reasonableness of DOE's withholding approval, and deposition testimony and exhibits were offered as evidence in support of the motions. Milton Lorenz of the DOE testified at the hearing, as did Glen Clover, who represented Permian in the settlement negotiations with Amber.

Judge McBryde issued a memorandum opinion and order on March 13, 1991, in which he found that DOE had unreasonably withheld approval of the Amber–Permian settlement. After noting that the DOE had given numerous and sometimes conflicting accounts of why it did not approve the settlement, the court found that the real reason was simply that DOE wanted the escrow funds released to the Treasury. The court also found that DOE failed to adequately consider the nature of the allegations against Permian and failed to consider the fact that the settlement was negotiated in good faith and at arms length by highly qualified counsel. As to the issue of the statute of limitations, the court stated that such a defense was "factually and legally questionable" at the time of DOE's decision. Consequently, the court declared that Amber was entitled to the $2.25 million in the escrow account.

Following the entry of its order finding that DOE had wrongfully withheld approval, the court directed the parties seeking affirmative relief to file an amended complaint setting forth their claims. In an amended complaint, Amber asserted a right to obtain the interest on the escrow fund from the date that DOE rejected the settlement. DOE objected to Amber's claim for interest on the ground that Amber lacked standing. In response to a suggestion from the court, Permian indicated that it would amend its complaint to request the interest in order to "act as a conduit" and eliminate any standing problem. Permian filed an amended complaint against DOE, seeking the principal in the escrow account, interest on the fund, and attorney's fees. On March 29, 1991, the court issued a memorandum opinion in which it found that Permian was entitled to judgment against the DOE for the principal amount of the escrow fund, for interest on the fund as of the date DOE rejected the settlement, and for attorney's fees. The court also found that judgment should be entered in favor of Amber against Permian for the principal of the escrow fund plus interest, which would become payable as soon as Permian received payment from DOE. A final judg-

ment in accordance with the court's findings was entered on March 29, 1991.

## II. Jurisdiction.

We first address the appellees' argument that we have no jurisdiction over the appeal. Appellees point out that the basis of the district court's ruling was that DOE violated its obligations under the consent order. Appellees argue that such a claim is simply a state law claim for breach of contract and is beyond this court's jurisdiction.

■ The scope of TECA's jurisdiction has been addressed many times. Amendments to the Economic Stabilization Act of 1970 (12 U.S.C. § 1904, note, § 211(b)(2)) vested this court with "exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder." These provisions were incorporated into the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. § 754(a)(1). TECA's jurisdiction is narrowly limited to the determination of issues arising under the ESA, the EPAA and their corresponding regulations. *See In re: Department of Energy Stripper Well Exemption Litigation, Atlantic Richfield Co. v. Alaska,* 945 F.2d 1575, 1578 (Temp.Emer.Ct.App., 1991). In determining whether an issue is one "arising under" the EPAA (or ESA), two principal inquiries are made:

[W]hether resolution of the litigation requires the application or interpretation of the EPAA or its regulations and whether any EPAA issue presented to this Court has been adjudicated in the court below.

*Id.* (*citing Pennzoil Exploration and Production Co. v. Lujan,* 928 F.2d 1139, 1141 (Temp.Emer.Ct.App.1991)).

■ Appellees' argument that the present case does not arise under the ESA is foreclosed by TECA precedent. In *Stertz v. Gulf Oil Corp.,* 783 F.2d 1064 (Temp.Emer.Ct.App.1986), we overruled a challenge to our jurisdiction in an appeal from the grant of a preliminary injunction. In assessing the district court's grant of the injunction we stated:

When deciding a motion for preliminary injunction, the court must consider the likelihood of success on the merits. Since the merits before that court *concerned the interpretation of a consent order resulting from an allegation by the DOE that Guld violated the ESA,* it necessarily adjudicated an ESA issue.

*Stertz,* 783 F.2d at 1069 (emphasis added). Similarly, in *Stripper Well Exemption Litigation,* 864 F.2d 796, 799 (Temp.Emer.Ct.App.1988), we found that an action seeking an interpretation of a final settlement agreement in the stripper well cases was "a cause of action arising out of federal law, specifically out of the laws and regulations concerning the Economic Stabilization Act." In the instant case, the consent order arose out of DOE's allegations that Permian violated the federal petroleum price and allocation regulations. The district court's ruling on Permian's action to enforce the consent order was the determination of an issue arising under the ESA. Accordingly, we have jurisdiction to consider the appeal.

## III. Contentions on Appeal.

A. *Vacation of Judge Belew's Memorandum Opinion.* The appellant DOE's first argument concerns Judge Belew's memorandum opinion of January 13, 1988, on the statute of limitations. DOE argues that Judge McBryde's order vacating that prior memorandum opinion was erroneous for two reasons: first, Judge Belew's memorandum opinion was the "law of the case," and second, Judge McBryde's determination that DOE lacked standing to assert defenses against Amber's claims was erroneous as a matter of law. DOE asks us to "reinstate" Judge Belew's opinion.

There were two matters to be disposed of by Judge McBryde when he was assigned the case: 1) Amber's claims against Permian; and 2) Permian's claim against DOE for unreasonably withholding approval of the settlement of Amber's claims. Although his predecessor Judge Belew was apparently on the verge of granting summary judgment on the merits of Amber's claims, the record is clear that he had not

yet done so. When Judge McBryde was assigned the case, he decided to address the "unreasonableness" claim first. Judge McBryde vacated the order dealing with the merits of Amber's claims and ruled on the claim asserted by Permian against the DOE. The judge's ruling on the latter issue obviated any need to rule on the merits of Amber's claims, since it had the effect of approving the settlement of those claims.

Our task in this appeal is not to determine whether the district court could properly have determined the case differently. Rather, we are called on to review the judgment entered by the district court—a judgment based on Permian's claim against the DOE—and determine whether that judgment is in accordance with the law and the evidence. Although DOE argues that there was nothing to prevent summary judgment being granted in its favor on Amber's claims (in light of Amber's waiver of the fraudulent concealment issue), the simple fact is that Judge Belew's ruling did not grant summary judgment and that no such final judgment was ever granted. Accordingly, even if Judge McBryde had not vacated the prior memorandum opinion, there would have been nothing to prevent him from addressing the "unreasonableness" claim before he ruled on Amber's claims against Permian. The fact that earlier memorandum was vacated, then, does not by itself undermine the validity of the judgment that was entered unless it was error for Judge McBryde to rule on Permian's claim before the statute of limitations issue was ruled on.

■ A review of the record convinces us that the DOE waived any objection it had to Judge McBryde's decision to address the "unreasonableness" claim first. Judge McBryde held a hearing on December 20, 1990, two days after he had entered an order vacating Judge Belew's ruling on the statute of limitations. Judge McBryde stated:

> [THE COURT]: * * * Both of the plaintiffs filed in January 1986 a motion to join the United States Department of Energy as a party and for order to show

cause why approval of negotiated settlement is not being unreasonably withheld. That is one of the motions we're considering now. And at the same time we are considering the motion of Permian for orders relating to settlement which raises basically the same question, as I understand it, as the plaintiff's motion. So why don't—I will invite the plaintiff to go forward, and I am considering this as an evidentiary hearing that would result in a ruling on whether or not DOE unreasonably withheld its approval. This is a hearing on the merits of that issue. And I don't suppose there's anyone that has any problem with getting that issue behind us.

> \*       \*       \*       \*       \*       \*

> Do you have any problem with that, Mr. Crockett?

> [MR. CROCKETT (for DOE)]: No your honor. I would just like to make a few preliminary legal problems that we have known that apply to the case at the present time.

> [THE COURT:] Okay.

> [MR. CROCKETT]: Obviously we felt that our motion for summary judgment should have been granted first, and that would have obviated the necessity for this hearing. Since the Court has already ruled upon that, that is no longer a question here this morning.

Rec.Vol. V at 1105–06. That DOE attempted to convince Judge McBryde at this hearing that DOE had standing to assert the statute of limitations defense to Amber's claims. DOE presented two cases to the judge to support its argument on standing. The following discussion then took place:

> [THE COURT:] That is good. I will consider those [cases], but I haven't been impressed so far that DOE has that right.

> Let me ask you this: You would agree that the first issue that has to be decided is whether or not the approval for settlement was unreasonably withheld or reasonably withheld?

> [MR. CROCKETT:] Our position was the opposite. Now that the Court has overruled that position, we're obviously will-

ing to go along with the Court's wishes, now that this has been placed first. We didn't believe that to be the most efficient way to do it, but we are obviously willing to go along with it since the Court wishes it done that way.

Rec.Vol. V at 1173–74. DOE stated no objection to the court addressing the "unreasonableness" claim first. DOE's only argument—the same argument it had advanced when it first entered the case—was that it would be more efficient to address the merits of Amber's claims first. *See* Rec.Vol. III at 297–98. Nothing was said to Judge McBryde about the "law of the case" nor was any other challenge raised to his authority to address the claims in the sequence that he did. In our view, appellant has shown no reversible error from the fact that Judge McBryde vacated the prior order and addressed the "unreasonableness" claim first.

█ Aside from our finding that DOE waived any objection to the sequence in which the claims were addressed, we cannot say that Judge McBryde's decision to vacate the statute of limitations ruling was erroneous. A review of the statute of limitations memorandum convinces us that the factual findings made therein were not adequate to support the conclusion that Amber's claims were barred. In overcharge cases, the statute of limitations is often difficult to apply because overcharges can occur over an extended period of time. For example, if overcharges began occurring outside of the limitations period but continued into the limitations period, the question arises as to whether the overcharge victim has only one cause of action (on which the statute of limitations began to run as of the date of the first overcharge) or whether each overcharge constitutes a new cause of action (which would allow the victim to recover for any overcharges occurring within the limitations period). Although this court's cases applying the statute of limitations to overcharges are admittedly confusing, the court has explained that

"the statute of limitations begins to run when an act with decisive continuing effect causes initial injury at a given time, and the statute is not tolled with respect to continued injury of similar character *following from the same act.*" *See Go–Tane Service Stations v. Clark Oil & Refining,* 798 F.2d 481, 484 (Temp.Emer.Ct.App.1986) (emphasis added). Thus, each individual overcharge will not constitute a separate cause of action *if* the overcharge is simply the result of a prior improper act that caused injury. In the statute of limitations memorandum in the instant case, the court appeared to erroneously conclude that in *all* overcharge cases the statute of limitations begins to run from the date of the first overcharge and that subsequent overcharges can never constitute a separate cause of action. The court's memorandum did not address the issue of whether the overcharges alleged to have occurred here within two years of the complaint were in fact the result of a prior act. The court even stated that "[i]t is unclear what one injury-causing act occurred and also when such act occurred." Rec.Vol. III at 591. The court nevertheless stated that "one act" causing the overcharges must have occurred over two years prior to the filing of the complaint. The findings of the district court were not adequate to support this conclusion.[3]

In addition to this impediment, we make two further observations concerning the order vacating the statute of limitations memorandum. First, in that memorandum the judge applied TECA's rulings on the statute of limitations to Count III of Amber's complaint, which was a breach of contract claim arising under state law. The court's reasons for doing so were not discussed, but apparently arose from its reading of *CPI Crude, Inc. v. Coffman,* 776 F.2d 1546 (Temp.Emer.Ct.App.1985). *CPI Crude,* however, was concerned with the application of a state statute of limitations to a federal claim under § 210 of the

---

**3.** Judge McBryde appears to have recognized this when he was assigned the case. In an order entered December 11, 1990, Judge McBryde identified the following as a factual

issue to be resolved: "[W]hether plaintiff's damages were the result of a single improper act or a continuing injury...." Rec.Vol.V at 1078A.

ESA. The case did not discuss the application of TECA's "one act" rule to a state claim for breach of contract. *See id.* at 1551 n. 1. We have serious doubts about the propriety of applying our rulings concerning tolling of the statute of limitations to a state claim that appears to be independent of the EPAA regulations.[4] Second, the question of standing is not as clear as the DOE suggests. DOE asserted early on in the litigation that the consent order gave it the right to litigate Amber's claims. Rec.Vol. III at 413. But the language of the consent order between DOE and Permian says nothing about DOE stepping into litigation brought against Permian. The escrow fund was established to pay claims "pursuant to any settlement negotiated by Permian and approved by the DOE, which approval shall not be unreasonably withheld." Rec.Vol. VII at 1866. In light of this provision, Judge McBryde viewed DOE's role as simply approving or disapproving any settlement negotiated by Permian and then, if necessary, explaining its decision. Rec.Vol. V at 1093. This view appears to be consistent with the consent order.

■ For the foregoing reasons, we find appellant's arguments as to the "law of the case" unpersuasive. The law of the case doctrine "is an amorphous concept." *Arizona v. California,* 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). It is intended to direct a court's discretion, not to limit its power to determine issues. *Id.* It is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice. *Id.* 460 U.S. at 618 n. 8, 103 S.Ct. at 1391 n. 8. *Cf. Getty Oil Co. v. Department of Energy,* 890 F.2d 425, 427 (Temp.Emer.Ct.App.1989). Under the circumstances presented here, appellant has not demonstrated that Judge McBryde

abused his discretion by vacating the memorandum opinion of Judge Belew.

*B. The finding that DOE unreasonably withheld approval of the settlement.* Appellant next contends that the district court erred by finding that DOE unreasonably withheld approval of the Amber–Permian settlement. Appellant argues that the finding has no basis in the record.

■ The district court's determination that DOE unreasonably withheld approval is a finding of fact. We will not set aside a factual finding of the district court unless it is clearly erroneous. Fed.R.Civ.P. 52(a). "A finding of fact is clearly erroneous only when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *United States v. Ferrell,* 717 F.2d 562, 564 (Temp.Emer.Ct.App.1983) (*citing United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). This standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it would have decided the case differently." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The appellate court may not reverse if the district court's account of the evidence is plausible in light of the record viewed in its entirety. *Id.* at 573–74, 105 S.Ct. at 1511. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574, 105 S.Ct. at 1511–12.

■ The district court's ultimate conclusion that the DOE unreasonably withheld approval of the settlement was, in part, based upon a number of subsidiary findings. See Rec.Vol.V at 1355–81. The court found that it was DOE's goal

---

**4.** In Count III, Amber alleged that Permian charged prices in excess of the contract price. Amber apparently contends that the contract required Permian to determine its "cost per barrel" by averaging the cost of all of the different tiers of oil instead of determining the cost for each tier individually. The resolution of this issue requires an interpretation of the contract language, not an interpretation of the regu-

lations. Amber may have a breach of contract claim against Permian even if the prices Permian charged were permissible under the regulations. *Cf. Johnson Oil v. Department of Energy,* 690 F.2d 191 (Temp.Emer.Ct.App.1982). Moreover, DOE's argument as to Count III of the complaint poses a difficult jurisdictional question concerning our authority to determine the parties' rights on a state law claim.

throughout to obtain the money in the escrow fund for the U.S. Treasury. According to the court's findings, this goal, rather than an evaluation of the merits of the settlement, was the reason DOE did not approve the settlement. Rec.Vol.V at 1372. The court found that DOE failed to take numerous relevant factors into account in deciding whether to approve the settlement, including: that the Permian attorney who negotiated the settlement was highly qualified and had expertise in the area; that the negotiations for the settlement were in good faith and at arms length; that Permian's counsel believed the statute of limitations question to be an open one; and that counsel for Permian believed the settlement to be a good one considering Permian's potential exposure in the suit. The court further found that DOE made no investigation to determine whether Permian had in fact overcharged Amber as alleged in the complaint and that Mr. Lorenz had no knowledge regarding the truth or falsity of the substance of Amber's claims at the time he rejected the proposed settlement. The court found that the statute of limitations defense was "factually and legally questionable" at the time DOE rejected the settlement.

There is evidence in the record to support the district court's conclusion that DOE rejected the settlement simply because it wanted the escrow fund released to the Treasury. When the Amber–Permian settlement was first presented to DOE, Mr. Lorenz rejected it on the grounds that it was too late to make a settlement out of the escrow fund. Mr. Lorenz' letter of June 7, 1985, clearly shows that he was vexed with Permian for impounding part of the escrow fund and for presenting a last-minute settlement to DOE. Rec.Vol.III at 338–40. The DOE's motion for summary judgment also asserted that DOE rejected

the settlement because it was submitted too late, Rec.Vol.III at 298, although Mr. Lorenz later denied that the tardiness of the settlement was a reason for it being ultimately rejected. The district court set forth in detail in its memorandum of March 13, 1991, the inconsistencies in DOE's explanations for its refusal of the settlement. The court viewed these explanations as after-the-fact attempts by DOE to justify its refusal. The court concluded that DOE refused the settlement because it wanted the escrow fund to go to the U.S. Treasury. Although this is not the only permissible view of the evidence, we cannot say that it is clearly erroneous.

There is also evidence to support the district court's finding that DOE rejected the settlement without adequately considering the merits of Amber's claims. DOE had no written standards to evaluate the settlement. Rec.Vol.V at 1213. DOE gave no weight to the fact that Permian was represented by competent counsel. *Id.* DOE never made a determination of what it believed the case was worth. *Id* at 1213–14. DOE was apparently unconcerned about the potential exposure of Permian in litigating the suit because DOE postulated that the statute of limitations would bar Amber's claims. *Id* at 1215–16. Mr. Lorenz gave no indication that he ever considered the possibility that the statute of limitations defense might fail, leaving Permian to face potential liability of $16 million. See Rec.Vol.V at 1231. This failure is especially glaring in light of the fact that the escrow fund was set up as it was to protect Permian from double liability.[5] Likewise, the possibility that Amber was the victim of overcharges was apparently given no consideration by DOE in rejecting the settlement. DOE made little or no effort to determine if in fact Amber was overcharged by Permian.[6] In his deposi-

5. We note that only $2.25 million was retained out of the escrow fund to pay the settlement. If the merits of Amber's claims were litigated and Amber obtained a judgment in excess of that amount, Permian would be faced with the double liability that DOE and Permian attempted to avoid when they established the escrow account.

6. The following excerpts are taken from the deposition of Milton Lorenz, Special Counsel to DOE:

QUESTION: [By Mr. Munn] Mr. Lorenz, did Permian charge Amber for any of the crude oil or all of the crude oil delivered from the Ranger System, prices in excess of the maximum allowable price that Permian was permitted to charge under the regulations?

tion, Mr. Lorenz explained the failure to make any investigation of the claims as follows:

> I did not construe the consent order provision dealing with these tendered settlements as requiring or in any way obligating the Department to undertake an independent investigation audit of all of the facts that might surround that which I would always presume the party making the request would know much more about. In other words, I did not see it our place to really be doing Permian's work. They could present to us anything they thought supported the settlement. I did not read the consent order to mean that we were going to conduct an investigation every time the plaintiff made a charge against them.

Rec.Vol.V at 1181. The fact that DOE did not do more to investigate Amber's claims was a factor for the district judge to consider in determining whether approval of the settlement was unreasonably withheld. We note the court's suggestion that DOE's desire to get the escrow fund released interfered with the performance of DOE's obligation to make an objective assessment of the settlement. Rec.Vol.V at 1378.

The district court's interpretation of the evidence is plausible in light of the entire record. A reasonable finder of fact confronted with all of the evidence could legitimately find that DOE unreasonably withheld its approval of the Amber–Permian settlement. Appellant's brief ably points out that this is not the only possible interpretation of the facts. But as we noted earlier, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City, supra.*

*C. Substitution of Permian.* Appellant's next argument is that the district court abused its discretion "by substitut[ing] [Permian] as the complaining party." Appellant's Br. at 23. Appellant states that "at Judge McBryde's invitation, [Permian] suddenly switched horses on the final day of the case and filed a cross-claim against DOE...." *Id.* This argument refers to an amended cross-complaint filed by Permian on March 25, 1991.

■ After Judge McBryde entered his order finding that the DOE had unreasonably withheld approval, he directed the parties seeking relief to file amended pleadings to reflect the current state of the case. Rec.Vol.V at 1382. Amber responded by filing an amended complaint seeking a judgment: 1) against Permian for the $2.25 million in the escrow account, and 2) against DOE for the interest on the fund from the date that DOE wrongfully withheld its approval.[7] In its answer, DOE asserted, *inter alia*, that Amber lacked standing to assert a claim for interest

---

ANSWER: [Mr. Lorenz] I don't know, Mr. Munn.

QUESTION: Did Permian charge Amber for Ranger System crude prices in excess of those agreed upon as the contract price between Permian and Amber?

ANSWER: I don't know that either, inasmuch as the contract terms read in terms of cost plus some margin.

QUESTION: Did the DOE make any effort to determine what Permian's cost was for the crude oil that it sold to Amber in your evaluation of the merits of the Plaintiff's claim against Permian in this case?

ANSWER: I didn't make any effort in the context of covering this, certainly.

QUESTION: You do not know what Permian's cost per barrel was, did you?

ANSWER: I do not know and did not then.

QUESTION: And there is no way for you to make an intelligent judgment as to whether the prices charged by Permian exceeded the contract price without knowing Permian's cost, is there?

ANSWER: That's correct.

QUESTION: You didn't even ask Permian what its cost was, did you?

ANSWER: That's correct.

QUESTION: Would you tell the Court is it true that the DOE did not make a determination one way or the other as to whether Permian has overcharged Amber under either the pricing regulations or the contract?

ANSWER: We did not do an investigation and did not make a calculation to determine what it sold or to what extent Amber had been overcharged by Permian.

Rec.Vol.III at 537–38.

7. The escrow agreement set up by Permian and the DOE called for the interest earned on the escrow fund to be paid over to DOE. Accordingly, most of the interest earned on the $2.25 million had been turned over to the Department of Energy.

against it. At a hearing on March 22, 1991, the court met with counsel to discuss the remaining issues in the case. In the course of that hearing, the court questioned DOE as to why Amber would not be entitled to the interest on the fund in light of the court's finding that DOE should have approved the settlement on December 16, 1985, and that Amber should have had the principal as of that date. DOE seemed to agree that Amber would be entitled to the interest assuming that it had been entitled to the principal as of December 16th. Rec. Vol.VI at 1510. DOE objected to awarding interest to Amber, however, arguing that Amber did not have standing because it was not a party to the consent order. The following discussion took place:

> THE COURT: Well. I thought I said in an order I signed that they were entitled to $2,250,000 out of the escrow account. That would seem, to me, to imply that they have got standing in the case.
>
> MR. CROCKETT: Maybe we have a misunderstanding here of your opinion, Your Honor. I understood your opinion to be based upon Permian's motion and that you did not address the question of whether Amber independently had standing to assert a claim against the Department of Energy. That was my understanding.
>
> THE COURT: I guess that's an accurate statement because I didn't think it was necessary—
>
> MR. CROCKETT: It wasn't necessary—
>
> THE COURT: —to discuss the issue.
>
> MR. CROCKETT: Since that time, Amber has now amended its complaint, and in its amended complaint it directly asserts that the Department of Energy is liable to Amber for the interest. Now this does squarely put the issue of standing, of Amber's standing, at issue.
>
> THE COURT: Well—
>
> MR. CROCKETT: And that would have to be resolved.
>
> THE COURT: It's a slightly different question. I have already ruled that, regardless of who has standing to raise the issue, Amber is entitled to the money out of the escrow account. It's a little bit different question now. It's already determined that they are entitled to the money and have been entitled to the money since December 16, 1985.
>
> MR. CROCKETT: We do not view the transaction under the terms of the consent order in that way, Your Honor. The Department has always taken the position that it is Permian's responsibility to submit the settlement; that it is Permian's responsibility to administer the escrow account; and that when any such settlement is approved, that money is transferred to Permian. It doesn't become the money of whoever the third party is that is settling; it becomes Permian's money to use in the settlement.
>
> THE COURT: What difference does that make? The fact of the matter is I think the consent order says it will be paid by the claimant. What difference does it make?
>
> MR. CROCKETT: It makes a difference as to who—
>
> THE COURT: Just some kind of principle you want to stand on?
>
> MR. CROCKETT: Yes, it is a principle, and it has been litigated many times, Your Honor.
>
> THE COURT: That is the silliest thing I have ever heard of.
>
> MR. CROCKETT: Well, there are a lot of companies and individuals out there who are disappointed at the way in which the Department of Energy manages either its settlements or its consent orders and how it handles the funds and who it pays those funds to, and the Department has been very sensitive about that question. We have litigated the question of whether a third party in Amber's position has standing to sue the Department directly and challenge our administration of a consent order, and—
>
> THE COURT: Well, I have already made the determination that you did the wrong thing without regard to who had the right to challenge it.
>
> MR. CROCKETT: That is right.
>
> THE COURT: So why do we even have to concern ourselves with that?

MR. CROCKETT: Only because of the fact that Amber has filed an amended complaint in which it alleges that DOE directly owes the interest to Amber.

THE COURT: Would you rather pay it to Permian and then let Permian pay it to Amber?

MR. CROCKETT: Yes, sir.

THE COURT: Do you have any problem with that?

MR. MUNN: [for Amber] The plaintiffs do not, Your Honor. It's six of one and half dozen of the other.

THE COURT: Well, why don't we provide that we do it that way?

MR. CROCKETT: Permian has not requested that relief.

THE COURT: Do you want to amend by making a verbal request for that relief?

MR. CLOVER: [for Permian] Your Honor, if that's necessary—and it seems to be—we will be happy to serve as a conduit. We will ask the court to award interest to Amber on the—

THE COURT: I will accept an amended supplemental pleading from Permian asking that the $2,250,000 plus all·interest earned on it since December 16, 1985, be paid to it as a conduit to Amber and· E–Z, unless· there is a problem with that. I'm not saying that's the way it will be worded. But is there any problem with that?

MR. CLOVER: Not from us, Your Honor.

THE COURT: How about from the plaintiff's ·standpoint?

MR. MUNN: We're taking a risk as to Permian's solvency, but we will do that.

THE COURT: Okay. Now does that solve the problem that apparently you have as a matter of principle?

MR. CROCKETT: Yes, that would eliminate the standing problem.

Rec.Vol.VI at 1512–16. In accordance with this discussion, Permian filed its amended complaint in which it sought a judgment against DOE for the amount of the principal plus interest. Permian also requested attorney's fees.

Appellant does not state precisely how it believes the district court abused its discretion, but this argument appears premised on the suggestion that the district court "realigned" the parties. The picture painted by·DOE's brief—that Permian "had been on DOE's side of the case until the final day of the litigation"—is not entirely accurate. Permian sought from the beginning to have its settlement with Amber approved. When the DOE objected to Amber asking the court to review DOE's refusal to approve the settlement, Permian stepped in and asked the court to find that DOE unreasonably withheld its approval and to order payment of the settlement out of the escrow fund. Rec.Vol.II at 252. This motion, as DOE knew, was the basis for the court's opinion of March 13, 1991. See Rec.Vol.VI at 1513. Thus, as to the "unreasonableness" claim against DOE, Permian was opposed to DOE throughout the litigation. We see nothing in the record to indicate that Permian "abandoned that position," Appellant's Br. at 23, when it joined in DOE's motion for summary judgment against Amber. As we have discussed in detail, there were two claims to be decided by the court in this case: the "unreasonableness" claim and Amber's claim against Permian. We see no inconsistency in Permian's asking the court to approve the settlement while at the same time denying liability on Amber's claims. When it appeared that Amber's claims against Permian were to be addressed first and that those claims might be dismissed on the merits, Permian joined in ·DOE's motion for summary judgment. Permian's motion did not constitute an abandonment of its position that DOE should have approved the settlement. When Judge McBryde took over the case, he decided that the "unreasonableness" claim should be considered first. At that point, Permian was again in the position of advocating approval of the settlement. DOE's characterization of Judge McBryde's "realignment of the parties" simply ignores the fact that Permian requested the court to find that DOE unreasonably withheld approval and to order payment of the settlement from the escrow funds. We find no abuse of discretion by the district court.

*D. Other arguments.* Appellant raises two other issues in this appeal. First, DOE contends that Permian's cause of action against it was barred by the statute of limitations. Second, in its reply brief, DOE argues that the district court erred by examining DOE's rejection of the settlement under a *de novo* standard of review. We have examined the record and find no indication that these issues were raised in the district court. We therefore decline to address them for the first time on appeal.

## IV. Conclusion.

The judgment of the district court is AFFIRMED.

WEIGEL, Judge, dissenting:

The United States Department of Energy (hereinafter "DOE") appeals from the judgment of the United States District Court for the Northern District of Texas, Fort Worth Division, upholding a settlement agreement between Amber Refining, Inc. (hereinafter "Amber") and Occidental Oil and Gas Company (hereinafter "Occidental").[1] The settlement provided that Occidental pay Amber $2.25 million out of a certain consent order fund (hereinafter "the Fund"). Occidental established the Fund to satisfy overcharge claims such as that made by Amber. DOE administered the Fund, and all payments made from the Fund required DOE approval. The judgment of the district court was based upon its conclusion that DOE acted unreasonably and in bad faith in withholding approval of the proposed settlement. I would vacate the judgment.

Throughout the life of this case, DOE's position has been that Amber's claims were time barred. Accordingly, DOE rejected the proposed settlement. Rec.Vol. VII at 1779–83. Relatively early in the case, Judge Belew considered the issue of the statute of limitations and concluded that, indeed, all of Amber's claims were time

barred. Rec.Vol. III at 581–92. His conclusion was based on a comprehensive review of applicable and analogous law. Rec.Vol. III at 581–92. Judge Belew, although inclined to dismiss Amber's claims without further proceedings, refrained *solely for the purpose of allowing Amber to conduct discovery on the issues of fraudulent concealment by Permian.* Rec.Vol. III at 591–93. Implicit in Judge Belew's ruling was his conclusion that DOE acted reasonably in rejecting the proposed settlement. Amber subsequently conceded that the statute of limitations had indeed run on Counts I and II of its complaint. Rec.Vol. III at 594–96, 596–606. Nevertheless, Judge McBryde, *sua sponte,* vacated Judge Belew's decision that the statute of limitations had run. Rec.Vol. V at 1078.

Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case except in unusual circumstances. See *Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162, 168 (3rd Cir. 1982). Although prejudgment orders remain interlocutory and can be reconsidered at any time, efficient disposition requires that each stage of litigation build on the last, and not afford an opportunity to revisit previous rulings. 1B Moore's Federal Practice ¶ 0.404[1] (2nd ed. 1991). This is particularly true when a case is transferred from one trial judge to another. See *Peterson v. Hopson,* 306 Mass. 597, 29 N.E.2d 140 (1940); *Petition of U.S. Steel Corp.,* 479 F.2d 489 (CA 6th 1973), *cert. denied,* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973). A district court judge cannot legitimately vacate the order of a predecessor in the same case simply because of disagreement as to what is "reasonable" in a particular situation.

Review of the entire record shows that there was no basis for vacating Judge Belew's order with respect to the limitations period applicable to Amber's claims. See *ACF Industries, Inc. v. Guinn,* 384 F.2d

---

**1.** Amber purchased crude oil from Permian Corporation (hereinafter "Permian"). Subsequently, Occidental acquired Permian. Amber's claim against Occidental alleges that Permian overcharged Amber in violation of Section 210 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note.

15 (5th Cir.1967), *cert. denied*, 390 U.S. 949, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1968). There was no change of circumstance justifying reconsideration of the order. Moreover, Judge McBryde did not find that Judge Belew erred in his analysis of the statute of limitations issue. Indeed, Judge McBryde erred in concluding that DOE lacked standing to raise the statute of limitations issue.

The majority opinion states that when Judge McBryde was assigned this case there were two matters to be resolved: (1) Amber's claims against Permian; and (2) Permian's claims against DOE. Close examination of the record shows that only one issue remained: Did Permian fraudulently conceal any facts from Amber justifying tolling the statute of limitations? Rec.Vol. III at 591–93. The fact that this was the only remaining issue is further evidenced by Judge Belew's decision to permit discovery on it alone. Rec.Vol.III at 591–93. Furthermore, at that time, Permian had made no claim against DOE. Rec. Vol. II at 106. On the contrary, from the time DOE was joined as a party through the time Judge McBryde was assigned this case, Permian and DOE worked together to defeat Amber's claims. Permian's claim against DOE was raised for the first time in March 1991. Rec.Vol. VI at 1515–16.

The majority opinion states that Judge McBryde simply changed the order of issues to be decided. The statement erroneously characterizes the events below. The record shows that Judge McBryde in fact restructured the case, and revisited an issue—DOE's reasonableness—decided by Judge Belew. Whereas the majority opinion states that there was no reversible error below, careful review of the record demonstrates that Judge McBryde's decision to vacate Judge Belew's prior rulings was an abuse of discretion.

In determining that Judge McBryde abused his discretion, we must consider the correctness of his decision and the reasons supporting it. See *ACF Industries, Inc. v. Guinn*, 384 F.2d 15 (5th Cir.1967), *cert. denied*, 390 U.S. 949, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1968); 1B Moore's Federal Practice ¶ 0.404[4.–2] (2nd ed. 1991). Even if there were valid grounds for the decision, those grounds must be carefully weighed against the undesirability of revoking the decision of another judge. In the case before us, the only ground for Judge McBryde's decision was the erroneous belief that DOE lacked standing to raise the statute of limitations issue. That decision was incorrect. Accordingly, the order of Judge Belew should be reinstated.