Louis A. TARTAGLIA, M.D., Plaintiff,

v.

The PAUL REVERE LIFE INSURANCE COMPANY, and Gabriel J. Rosko, Defendants.

No. M 8–85.

United States District Court, S.D. New York.

Dec. 17, 1996.

---

*OPINION AND ORDER*

STEIN, District Judge.

Defendant The Paul Revere Life Insurance Company has moved pursuant to Rule 45(c) of the Federal Rules of Civil Procedure for an order compelling non-party Staten Island Hospital to produce and permit inspection and copying of documents in response to a subpoena previously served on it. That motion is granted in part and denied in part for the reasons set forth below.

*Factual Background*

The underlying breach of contract action in this case is currently pending in the United States District Court for the Northern District of Ohio. The action is based on Dr. Tartaglia's claim that Paul Revere breached its obligation to pay him disability income insurance benefits and business overhead expenses pursuant to his contracts of insurance with the company. Paul Revere seeks rescission of the contracts and repayment of the benefits paid to Dr. Tartaglia because, it alleges, Dr. Tartaglia made material misrepresentations in his application for insurance by failing to disclose his history of drug and alcohol abuse.

Paul Revere served a subpoena on non-party Staten Island on June 12, 1996, requesting the production of all documents related to Dr. Tartaglia's employment there from 1982 through 1986. Staten Island has produced certain documents in response to the subpoena, but refuses to produce other records on the grounds that they are exempt from disclosure pursuant to, *inter alia*, New York Public Health Law § 2805-m and Education Law § 6527. Paul Revere brought this proceeding to compel the hospital to produce the records, claiming that the law of Ohio, not New York, applies to the issue of privilege and that, pursuant to Ohio law, the documents must be produced. Paul Revere alternatively claims that the particular documents at issue are not privileged even under New York law.

*Conflict of Laws*

The Court finds that New York's substantive law of privileges should apply to the resolution of this motion. Federal Rule of Evidence 501 states, in pertinent part, that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law." Fed. R.Evid. 501. Because this diversity action involves claims and defenses pursuant to state law, state law shall also determine the issue of privilege.

■ The question here is whether the law of Ohio or New York should be used to resolve the parties' discovery dispute. Federal district courts sitting in diversity cases apply the conflict of laws rules prevailing in the state in which they are situated. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *see Mazzella v. Philadelphia Newspapers, Inc.*, 479 F.Supp. 523, 526 (E.D.N.Y.1979); *Anas v. Blecker*, 141 F.R.D. 530, 531–32 (M.D.Fla. 1992); *Connolly Data Systems, Inc. v. Victor Technologies, Inc.*, 114 F.R.D. 89, 91–92 (S.D.Cal.1987). Thus, in determining which state's law of privileges applies to this discovery dispute, the Court must refer to New York's conflict of laws rules.

New York choice of law gives "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473, 481–82, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283–84 (1963); *see also Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 319, 618 N.Y.S.2d 609, 613, 642 N.E.2d 1065, 1069 (1994) (describing *Babcock* interest analysis). Applying this principle here, New York privilege law applies to the subpoena at issue. The hospital is a New York corporation and, during the relevant time period, Dr. Tartaglia practiced in New York. In addition, all of the records were created and maintained in New York,

with the expectation that they would remain confidential in accordance with New York law.

Paul Revere argues that because federal jurisdiction in the underlying action is based solely on diversity and the Ohio district court hearing the case has ruled that Ohio law will apply to Dr. Tartaglia's substantive claims, Ohio privilege law should apply to this matter pursuant to Federal Rule of Evidence 501. However, Rule 501 does not set forth *which* state's substantive law will apply in such a controversy, *see In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 76 F.R.D. 47, 53 (W.D.Pa.1977), nor do the cases upon which Paul Revere relies point to such a clear rule of decision.

To the contrary, those cases stand merely for the proposition that state law, as opposed to federal common law, should decide questions concerning the application of substantive privilege doctrine. *See Sackman v. Liggett Group, Inc.*, 920 F.Supp. 357, 362 (E.D.N.Y.1996); *Application of American Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir. 1989); *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 560 (S.D.N.Y.1994). In fact, one of the cases to which Paul Revere cites, *Sackman v. Liggett Group*, first states that "[i]f the privilege question relates to claims which will be decided under substantive state law, then the state's privilege law applies," *id.* at 362, only then to apply New York choice of law principles to the question of what particular state's law should decide the privilege question at issue. For these reasons, the Court finds that New York law should apply to the resolution of Paul Revere's motion to compel.

### Staten Island's Claims of Privilege

Staten Island raises six New York statutory bases to support its claims of privilege: (1) Public Health Law § 2805–m and Education Law § 6527; (2) Public Health Law § 230; (3) Mental Hygiene Law § 33.13; (4) the attorney-client privilege; and (5) the doctor-patient privilege. In determining whether these privileges apply to the documents at

issue, the burden is on Staten Island, the party claiming the protection of a particular privilege, to establish the essential elements of the privileged relationship. *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir.1995); *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir.1987); *see e.g., In re Horowitz*, 482 F.2d 72, 82 (2d Cir.1973); *Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 49 (S.D.N.Y.1994) (citations omitted).

1. *Public Health Law § 2805–m and Education Law § 6527.*

■ Staten Island claims that every document on its privilege log is immunized from disclosure to Paul Revere pursuant to New York Public Health Law § 2805–m. That statute provides:

> Notwithstanding any other provisions of law, none of the records, documentation or committee actions or records required pursuant to sections [2805–j and 2805–k or] ... the reports required pursuant to section [2805–l] ... shall be subject to disclosure under article six of the public officers law or article thirty-one of the civil practice law and rules, except as hereinafter provided or as provided by any other provision of law.

N.Y.Pub.Health Law § 2805–m(2) (McKinney 1993).[1] The hospital also claims that all of these documents are protected from disclosure under New York Education Law § 6527, subdivision 3, which provides:

> Neither the proceedings nor the records relating to performance of a medical or a quality assurance review function ... shall be subject to disclosure under article thirty-one of the civil practice law and rules except as hereinafter provided or as provided by any other provision of law.

N.Y.Educ.Law § 6527(3) (McKinney 1985 & Supp.1996). Because of the similarity of the two provisions, and because Staten Island, the party bearing the burden in this matter, discusses the statutes as together setting forth "[t]he New York statutory exemption from disclosure of confidential peer review

---

1. Public Health Law § 2805–j requires hospitals to institute a malpractice prevention program to be supervised by a quality assurance committee.

Public Health Law § 2805–k requires hospitals to establish procedures for the periodic review of clinical privileges granted to physicians.

and quality assurance information," (Mem. of Law at 8), the Court will address the statutes concurrently.

As noted by Paul Revere, Public Health Law § 2805–m was added to the laws of New York in 1986 as part of a comprehensive package of medical malpractice reform legislation. *See* Medical and Dental Malpractice and Professional Conduct, 1986 N.Y.Laws, ch. 266, § 31; *White v. New York City Health & Hosps. Corp.*, No. 88 CIV. 7536, 1990 WL 33747, at *10 (S.D.N.Y. March 19, 1990). The legislature enacted that legislation in part to combat the incidence of medical malpractice, noting that:

> physicians responsible for acts of professional misconduct should be subject to effective discipline and ... improvements in the disciplinary process will contribute to the protection of the public health and the reduction of the incidence of malpractice.

*White*, No. 88 CIV 7536, 1990 WL 33747, at *10 (quoting Medical and Dental Malpractice and Professional Conduct, 1986 N.Y.Laws, ch. 266, § 1). The legislature believed that a lower incidence of medical malpractice would ensure the continued adequacy of medical malpractice insurance for health care providers and thereby make adequate medical services available to the public. *See id.*

The confidentiality provision embodied in section 2805–m covers not only incident reports but also quality assurance committee decisions and is described in the legislative history as designed to " 'ensure that physicians and other health care providers and institutions are not deterred from participating in quality assurance, incident reporting and peer review programs or from complying with misconduct reporting requirements.' " *Lizotte v. New York City Health & Hosps. Corp.*, No. 85 Civ. 7548, 1989 WL 260217, at *2 (S.D.N.Y. Nov. 28, 1989) (citations omitted).

The policy goals underlying Education Law § 6527(3) are similar. *See Albany Medical Center Hosp. v. Denis*, 161 A.D.2d 1030, 1030, 557 N.Y.S.2d 523, 524 (N.Y.App.Div., 3d Dep't 1990); *Parker v. St. Clare's Hosp.*, 159 A.D.2d 919, 920, 553 N.Y.S.2d 533, 534 (N.Y.App.Div., 3d Dep't 1990); *Bush v. Dolan*, 149 A.D.2d 799, 799–800, 540 N.Y.S.2d 21, 22–23 (N.Y.App.Div., 3d Dep't 1989). As the court stated in *Parker v. St. Clare's Hospital*,

> The purpose of [section 6527(3) ] is to encourage peer review of physicians at medical review committee meetings by guaranteeing confidentiality to participants, in order to accomplish improvement in the quality of medical care.

*Id.* at 920, 553 N.Y.S.2d 533 (citation omitted).

The court in *White v. New York City Health & Hospitals Corp.* recognized that New York's legitimate interest in improving the quality of health care and lowering the cost of malpractice insurance and health services is served by protecting the confidentiality of incident reports regarding physician misconduct. The court wrote:

> To permit disclosure of those reports in circumstances where their contents could lead to admissible evidence of medical malpractice would be entirely contrary to the spirit and intent of the comprehensive professional malpractice legislation adopted by the New York State legislature in 1985 and 1986.

*Id.* at *10. While recognizing these important policy goals, however, the court in *White* allowed the disclosure of medical records of the type sought here because the purpose of the statute would not be served by maintaining confidentiality in actions that were not based on medical malpractice. *Id.; see also Lizotte v. New York City Health & Hosps. Corp.*, No. 85 Civ. 7548, 1989 WL 260217 (S.D.N.Y. Nov. 28, 1989) (incident reports, quality assurance committee discussions, and minutes of psychiatric directors' meetings not privileged from disclosure in non-malpractice action).

Staten Island does not dispute that the goal of both Public Health Law § 2805–m and Education Law § 6527(3) is to reduce the incidence of medical malpractice in New York. Nevertheless, it urges that the statutes should be applied in this case to protect the hospital's peer review and quality assurance proceedings from disclosure. This Court does not agree. In view of the legislative purpose of the statutes and the fact that

the requested documents are not for use in an action against either a particular physician or the hospital itself, the policy justifications underlying nondisclosure do not apply to this case. Because the insurance company here seeks the relevant documents in order to defend a breach of contract claim and to prevent insurance fraud, there is no basis for nondisclosure under either Public Health Law § 2805–m or Education Law § 6527(3).

The cases cited by Staten Island are distinguishable. In two of those cases—*Armenia v. Blue Cross of Western New York, Inc.*, 190 A.D.2d 1025, 593 N.Y.S.2d 648 (N.Y.App. Div., 4th Dep't 1993), and *Shapiro v. Central General Hosp.*, 171 A.D.2d 786, 567 N.Y.S.2d 507 (N.Y.App.Div., 2d Dep't 1991)—the relevant documents were protected from disclosure due in part to the fact that disclosure would compromise the peer review and quality assurance functions of the health care providers involved. In contrast, the documents that Paul Revere seeks from Staten Island will not be used against the hospital, or against Dr. Tartaglia in his professional capacity.

The third case cited by Staten Island— *Daly v. Genovese*, 96 A.D.2d 1027, 466 N.Y.S.2d 428 (N.Y.App.Div., 2d Dep't 1983)— involved an action for defamation between two physicians based upon allegedly slanderous statements made during the course of peer committee review proceedings. Although the case did extend the privilege embodied in Education Law § 6527(3) to discovery material in a case not involving a medical malpractice action, the case upheld precisely the policy goals underlying the confidentiality statute—encouraging the open discussion and investigation of instances of misconduct of hospital physicians in order to improve medical care and reduce instances of medical malpractice. In this case, the legislative policy of encouraging hospitals to review the shortcomings of their physicians would not be furthered by protecting the relevant documents from disclosure, because there is no threat of litigation against those involved in Staten Island's peer review and quality assurance functions. Indeed, Paul Revere eliminates the danger of such litigation by offering to enter into a confidentiality agreement with Staten Island that limits the scope of distribution and allowable uses of the hospital's documents. Under the circumstances, the Court finds that neither Public Health Law § 2805–m nor Education Law § 6527 applies in the context of this litigation to the documents withheld by Staten Island.

### 2. *Public Health Law § 230.*

Staten Island claims that several documents concerning communications between the hospital and the New York State Department of Health Office of Professional Medical Conduct ("OPMC") are protected from disclosure by Public Health Law § 230. That provision creates a state board authorized to investigate instances of professional misconduct and requires hospitals to report to the OPMC information "which reasonably appears to show that a licensee is guilty of professional misconduct." N.Y.Pub.Health Law § 230(11)(a) (McKinney 1990 & Supp. 1996). The statute further states that complaints filed with the board "shall remain confidential and shall not be admitted into evidence in any administrative or judicial proceeding." *Id.*

The statute was enacted to "encourage disclosure of medical malpractice and physician misconduct and to alleviate complainants' fear of litigation resulting from doing so." *Axelrod v. Sobol*, 78 N.Y.2d 112, 115, 571 N.Y.S.2d 902, 903, 575 N.E.2d 388, 389 (1991). The policy reasons underlying this confidentiality provision thus parallel those that underlie Public Health Law § 2805–m and Education Law § 6527. The Court's analysis of those policy reasons with respect to the facts of this case applies to Staten Island's claim of privilege under this statute as well. The purpose of Public Health Law § 230 would not be furthered by applying its confidentiality provision to the facts of this case, since here there is no risk of litigation against either the hospital or the individual physicians involved in Staten Island's peer review and quality assurance process. Therefore, Staten Island cannot rely on Public Health Law § 230 to shield its records from discovery in this breach of contract

action.[2]

### 3. *Mental Hygiene Law § 33.13.*

■ Staten Island also relies on Mental Hygiene Law § 33.13, which requires certain facilities to maintain clinical records for patients. It provides that those records shall not be released to any person except, *inter alia*, "pursuant to an order of a court of record requiring disclosure upon a finding by the court that the interests of justice significantly outweigh the need for confidentiality." N.Y. Mental Hyg. Law § 33.13(c)(1) (McKinney 1996).

First, Paul Revere notes that a number of the documents that Staten Island claims are protected by this privilege do not appear to be clinical records of patients at all, but instead letters or memoranda regarding Dr. Tartaglia's conduct. Staten Island, the party with the burden in claiming this privilege, does not dispute this point. Therefore, to the extent that the documents in the privilege log do *not* appear in actual clinical records, they are not covered by this privilege.

Second, if any of the records concern Dr. Tartaglia *as a patient,* Paul Revere has possession of a medical release signed by Dr. Tartaglia that would alleviate the hospital's confidentiality concerns regarding those particular records. (Paul Revere's Mem. of Law. at 17.)

Finally, in this particular matter, the interests of justice significantly outweigh the need for confidentiality of the patient records. Paul Revere has indicated that it will enter into a confidentiality agreement with Staten Island with regard to all of the records involved in this case. With regard to clinical patient records that fall with the scope of Mental Hygiene Law § 33.13, identifying patient information should be redacted as part of such an agreement. Paul Revere has a serious need for access to the documents withheld by Staten Island to prove that it is entitled to rescind Dr. Tartaglia's insurance

contracts and obtain repayment of the benefits it has already dispersed. Under the circumstances, the Court finds that the insurance company's interest in avoiding insurance fraud and in defending this breach of contract action warrants disclosure of the patient records, subject to an appropriate confidentiality agreement and redaction.

### 4. *The Attorney–Client Privilege.*

■ Staten Island also claims that a number of documents are protected from disclosure by the attorney-client privilege, which protects communications made in confidence by a client to her lawyer to obtain legal advice. *See, e.g., Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); *Vingelli v. United States,* 992 F.2d 449 (2d Cir.1993). Paul Revere contends that only three of the relevant documents reflect communications between the hospital and an attorney, and that the rest of the documents "appear to have been generated as part of Staten Island's medical review process, not for the purpose of obtaining legal advice." (Paul Revere's Mem. of Law at 18.) Staten Island, the party bearing the burden, does not rebut Paul Revere's claim.

With regard to this claim of privilege, only the three documents that actually reflect communications between Staten Island and an attorney, (Privilege Log, Exh. H to Paul Revere's Order to Show Cause, Bates Nos. 156, 157, 184), may be withheld from discovery by Staten Island. The remaining documents are not protected by the attorney-client privilege.

### 5. *The Doctor–Patient Privilege.*

Finally, Staten Island claims that certain documents are protected from disclosure by the doctor-patient privilege, (Privilege Log, Exh. H to Paul Revere's Order to Show Cause, Bates Nos. 24–27, 29, 30–31). That

---

**2.** Staten Island also claims that Public Health Law § 230(10)(a)(v) shields its records from disclosure. That provision provides that the records of investigations by the OPMC into professional misconduct "shall be confidential and not subject to disclosure at the request of any person,

except as provided by law in a pending disciplinary action or proceeding." N.Y.Pub.Health Law § 230(10)(a)(v) (McKinney 1990 & Supp.1996). This statute makes confidential the records held by the OPMC itself, however, not the records retained by the hospital.

privilege protects from disclosure information that a health professional "acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity." N.Y.C.P.L.R. § 4504 (McKinney 1992 & Supp.1996).

As discussed above, to the extent that any of the records concern Dr. Tartaglia *as a patient,* Paul Revere has possession of a medical release signed by Dr. Tartaglia that should alleviate the hospital's confidentiality concerns regarding those particular records. With regard to the clinical records of unknown patients, although it is not clear from the privilege log that the relevant documents actually contain confidential patient information, an appropriate confidentiality agreement should satisfy Staten Island's fears. Accordingly, the Court finds that the hospital may not withhold the relevant documents from discovery.

### Conclusion

In accordance with the foregoing, IT IS HEREBY ORDERED that Paul Revere's motion for an order compelling non-party Staten Island Hospital to produce and permit inspection and copying of documents in response to the subpoena served on it is granted except as to documents numbered 156, 157, and 184 on Staten Island's privilege log, which documents are protected from disclosure by the attorney-client privilege. Staten Island is hereby ordered to comply with the subpoena dated June 12, 1996, with regard to all other documents on its privilege log. Prior to disclosure, the parties are directed to execute and submit to the Court an appropriate confidentiality agreement.

SO ORDERED.