In re Application of Lawrence J. RA-
MAEKERS and Jay Alix & Associates,
to Compel Compliance with a Subpoena
Duces Tecum.

No. 98 MISC. 8–85(WHP).

United States District Court,
S.D. New York.

Jan. 15, 1999.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

On December 8, 1998, Lawrence J. Ramaekers ("Ramaekers") and Jay Alix and Associates moved, pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, for an order compelling Reuters News Service ("Reuters") to comply with a subpoena duces tecum issued from the Southern District of New York in October, 1998. The subpoena was addressed to "Keeper of the Records" of Reuters Information Services, Inc., and sought documents and testimony.[1] Ramaekers and Jay Alix and Associates (collectively, "Movants") are defendants in a federal securities class action pending in United States District Court for the District of Massachusetts. *See In re Centennial Technologies Securities Litigation,* D. Mass. Docket Nos. 1:97–10304–REK, 1:97–10243 and all related cases.

Many of the issues presented by this motion were raised in a parallel proceeding before Senior District Judge Peter K. Leisure involving a subpoena duces tecum served by Movants on Dow Jones & Company, Inc. *See In re Application of Dow Jones & Company, Inc., to Quash a Subpoena Duces Tecum,* 1998 WL 883299 (S.D.N.Y. 1998). This Court has considered the arguments advanced by counsel in their papers and at oral argument conducted on December 29, 1998. For the reasons stated below, the motion to compel is granted.

### Factual Background

On February 11, 1997, Centennial Technologies, Inc. ("Centennial") issued a press release announcing the removal of its founder and chief executive officer, Emmanuel Pinez, after it discovered that Pinez may have been responsible for fraudulent overstatements in the company's financial statements and reports. Two days later, on February 13, 1997, Centennial hired Ramaekers, a principal of the Michigan-based consulting firm J. Alix & Associates, as its interim chief executive officer to implement a "turnaround" of the company.

On February 25, 1997, Ramaekers was interviewed by Michael Ellis, a financial news reporter for Reuters. The content and timing of various statements that Ramaekers allegedly made during that interview are disputed. According to the complaint, the statements Reuters attributed to Ramaekers in a news story it published on the internet on February 25, 1997 caused a huge run-up in the price of Centennial's stock. Later that day, after Centennial announced that Ramaekers' remarks had been misinterpreted, the New York Stock Exchange halted trading in its stock. Centennial's stock plummeted when trading resumed two days later in the wake of another press release by Centennial announcing, contrary to Ramaekers' assessment, that "the [c]ompany was still in dire trouble." Compl. ¶¶ 157–61.

Ellis made an audio recording of his interview with Ramaekers. Oddly enough, even though Ramaekers was advised immediately after the interview that his comments might present a problem for Centennial, he did not make a record of his recollection of the interview. In fact, Ramaekers apparently did not reduce his recollection to a writing until thirteen months later when he submitted his March 25, 1998 declaration.

The underlying class action in the District of Massachusetts against the Movants and Centennial alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., negligent misrepresentation and other supplemental claims. The plaintiffs in that action seek $55 million in damages. The subpoena presently before this Court seeks the following four categories of documents:

1. All tape recordings and interview notes from a February 25, 1997 interview of

---

1. Although the October 21, 1998 subpoena sought testimony and documents, the present motion is limited to the production of documents and an audio tape. Furthermore, while the subpoena was addressed to Reuters Information Services, Inc., the notice of motion seeks an order compelling Reuters News Service.

Through its attorneys, Reuters America Inc. opposes the motion to compel. While the names of the corporate entities differ as among the subpoena, the moving papers and the opposing papers, the parties do not dispute that the proper entity has been served.

Lawrence J. Ramaekers ("Ramaekers") by reporter Michael Ellis.

2. The publication of any statement made or information provided by Ramaekers to Michael Ellis on February 25, 1997, including the time, date and medium of each such publication.

3. Any interviews or conversations with any Centennial Technologies, Inc. ("Centennial") director, officer, employee, agent or representative for the period beginning February 1, 1997 through March 1, 1997.

4. All documents or publications that concern or refer to Centennial, Ramaekers, Jay Alix & Associates or Cheryl Byrne (an employee of Centennial) for the period beginning February 11, 1997 through March 11, 1997.

Reuters has agreed to produce the information requested in the second branch of the document request. Thus, this Court need address only the remaining three categories. Reuters has not made a showing that any of the source materials sought by Movants are confidential. The audio tape is the paradigm of nonconfidential information because Ramaekers himself was the source. Moreover, this case does not raise the spectre that litigants will expect the press to do their legwork in the discovery process.

## *Discussion*

 Reuters makes several arguments in opposition to the motion to compel. First, Reuters argues that the information sought is immaterial and unnecessary to Movants' defense, and thus should not be produced pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure. Second, Reuters argues that it is entitled to a qualified reporter's privilege based on the law of the First Circuit. In the alternative, Reuters argues that the Second Circuit's recent decision in *Gonzales* is at odds with prior Second Circuit precedent recognizing a qualified reporter's privilege, and therefore should be disregarded.

 Civil discovery rules apply to subpoenas issued under Rule 45. FED. R. CIV. P. 26(b)(1) states that "[p]arties may obtain dis-

covery regarding any matter ... which is relevant to the subject matter involved in the pending action ..." Rule 26 also provides that a district court may limit discovery if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Against the backdrop of Rule 26, courts can determine whether to enforce a subpoena for the production of documents. The burden of persuasion is borne by the party opposing the subpoena. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y.1996).

Reuters has not demonstrated that the subpoena is unreasonably cumulative or duplicative, or that discovery is obtainable from a more convenient source. Rather, Reuters claims *inter alia* that there is no difference between Ramaekers' present recollection of what he told Ellis and the statements Ellis attributed to him in the Reuters article. Reuters argues that the information sought is unnecessary because Ramaekers' March 25, 1998 declaration constitutes a concession that the Reuters article quotes him accurately. This Court disagrees. Ramaekers' declaration purports to reconstruct his recollection of events that occurred thirteen months earlier. The parties in this proceeding do not dispute that the audio tape or its transcript is the sole contemporaneous record of the February 25, 1997 interview. It is relevant and not unreasonably cumulative.

Reuters also argues that compliance with the subpoena would require the disclosure of privileged materials, namely, information protected under the First Amendment reporter privilege. Rule 45 provides that a

court "shall quash or modify the subpoena if it ... requires disclosure of privileged or other protected matter and no exception or waiver applies." FED. R. CIV. P. 45(c)(3)(A).

■ Before considering whether Reuters is entitled to any privilege, this Court must first decide whether the privilege Reuters seeks to invoke is governed by federal or state law. The complaint in the underlying action alleges federal claims based on section 10(b) and 20(a) of the 1934 Securities Act. In federal question cases like this one, the federal law of privilege applies. See e.g., Gonzales v. National Broadcasting Co., 155 F.3d 618, 620 (2d Cir.1998); FED.R.EVID. 501. Federal privilege law is controlling notwithstanding Centennial's supplemental state law claims. See von Bulow v. von Bulow, 811 F.2d 136, 141 (2d Cir.1987).

■ Reuters argues that under federal choice of law rules, First Circuit law is controlling because that circuit has the most significant interest in determining the scope of Reuter's privilege.[2] Reuters arrives at that conclusion by weighing the following factors: (1) the underlying action is pending in the District of Massachusetts; (2) both Ramaekers and Ellis were in Massachusetts when the telephone interview took place; (3) the Reuters stories were both datelined Boston; and (4) the tape sought in the subpoena is located outside New York.

This Court declines Reuters' invitation to embark on a choice of law analysis and speculate how the First Circuit would decide the instant application. Second Circuit law, and most notably the Gonzales decision, governs this motion to compel.

■ Choice of law analysis is generally inappropriate in federal question cases, such as the instant action, where the choice involves the law of two or more circuits. "Federal courts comprise a single system applying a single body of law, and no litigant has a right to have the interpretation of one federal court rather than that of another determine his case." Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir.1993) (per curiam) (quoting H.L. Green Co. v. MacMahon, 312 F.2d 650, 652 (2d Cir.1962)).

District courts have a responsibility to engage independently in reasoned analysis. Binding precedent for the district courts within a circuit is established by the Supreme Court and by the court of appeals for the circuit in which the district court sits. "There is no room in the federal system of review for rote acceptance of the decision of a court outside the chain of direct review. If a federal court simply accepts the interpretation of another circuit without independently addressing the merits, it is not doing its job." In re Korean Air Lines Disaster, 829 F.2d 1171, 1175 (D.C.Cir.1987) (Ruth Bader Ginsburg, J.), aff'd sub nom. on other grounds, Chan v. Korean Air Lines, Ltd., 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989) (quoting R.L. Marcus, Conflict Among Circuits and Transfers Within the Federal Judicial System, 93 Yale L.J. 677, 702 (1984)).

District courts also have a paramount interest in enforcing subpoenas emanating from their jurisdiction in a predictable and consistent manner. That interest would be undermined if a district court were required to apply choice of law principles whenever a discovery dispute involved litigation pending in another district or circuit. Apart from spawning wasteful litigation over the appropriate choice of law, such a rule would leave litigants wondering what body of precedent governs their discovery dispute. Even after that bridge was crossed, the body of precedent created through such an itinerant analysis would be infused with a subtle layer of uncertainty. Litigants would then be required to intuit whether the holding of a particular case hinged on Second Circuit precedent or on the application of another circuit's pronouncements.[3] In short, the line of

---

**2.** It is noteworthy that despite Reuters' strenuous choice of law argument, the law of the First and Second Circuits is not in direct conflict. The First Circuit has not ruled on whether nonconfidential information should be accorded protection under the First Amendment reporter's privi-

lege. See In re Cusumano v. Microsoft Corp., 162 F.3d 708, 1998 WL 852858, at *7 (1st Cir.1998).

**3.** In some instances, the differences could be stark. There is a split among the circuit courts on the issue of whether any qualified privilege applies to nonconfidential information. Compare

reasoning advocated by Reuters would obscure rather than enhance uniformity in federal jurisprudence.

It is noteworthy that Reuters has not cited a single case employing choice of law analysis as between circuits. On the contrary, in cases like this one, courts have uniformly applied the law of the circuit in which the subpoena issued. *See Gonzales v. National Broadcasting Co., Inc.,* 155 F.3d 618 (2d Cir.1998) (applying federal law as interpreted by the Second Circuit in federal question case where underlying action litigated in Western District of Louisiana and subpoena issued by Southern District of New York); *In re Madden,* 151 F.3d 125 (3d Cir.1998) (applying federal law as interpreted by the Third Circuit in federal question case where underlying action litigated in District of Connecticut and subpoenas issued by Western District of Pennsylvania); *In re Application of Dow Jones & Co., Inc.,* 1998 WL 883299 (S.D.N.Y.1998) (applying federal law as interpreted by the Second Circuit in federal question case where the underlying action litigated in District of Massachusetts and subpoena issued by Southern District of New York); *In re Cusumano v. Microsoft Corp.,* 162 F.3d 708, 1998 WL 852858 (1st Cir.1998) (applying federal law as interpreted by the First Circuit in federal question case where the underlying action litigated in District of Columbia, and subpoena issued by District of Massachusetts).

Finally, contrary to Reuters' assertion, Movants cannot be accused of "forum shopping" because they served the subpoena on Reuters in New York. Rule 45 requires that a subpoena commanding only document production must issue from the court for the district in which the production is to be made. Because Reuters is headquartered in New York, it was appropriate for Movants to subpoena the tape in the Southern District of New York.

■ Applying Second Circuit law to the nonconfidential information sought here,

*Gonzales* forecloses Reuters' objection based on a qualified reporter's privilege. *See Gonzales,* 155 F.3d at 626. As the information requested in Movants' subpoena is nonconfidential, and Reuters has failed to show that the subpoena demands confidential information, no privilege can protect it from production.

■ Even if this Court accepted Reuters' argument that *Gonzales* has no precedential value, this Court would still grant that branch of the motion to compel directed at the audio tape. In that regard, Movants have satisfied the three part test for *confidential* information under *In re Petroleum Products Antitrust Litigation,* 680 F.2d 5, 7 (2d Cir.1982) (per curiam). Disclosure of material protected under the qualified reporter's privilege may only be ordered upon a clear and specific showing that the information is highly material and relevant, 2) necessary or critical to the maintenance of the claim, and 3) not obtainable from other sources. *Id.*

The audio tape is highly material and relevant to the securities fraud claims in the underlying action because it evidences the mix of information available to the market at the time in question, and may serve to demonstrate that Ramaekers' statements did not materially alter this mix of information. Second, the audio tape is necessary and critical to Ramaekers' defense because it evidences exactly what Ramaekers said to Ellis in the February 25, 1997 interview. Finally, this audio tape is not available from any other source. The parties concede that the audio tape is the only contemporaneous recording of the February 25, 1997 interview.

Finally, Reuters argues that requiring them to disgorge their raw unedited work product on a routine basis would be burdensome and disruptive to the day to day business of news organizations. The Second Circuit has considered and rejected this very argument. *See Gonzales,* 155 F.3d at 625 ("Responding to discovery may well take

---

*Shoen v. Shoen,* 5 F.3d 1289, 1295 (9th Cir.1993) (holding that a qualified journalist privilege applies to nonconfidential materials) *and United States v. Cuthbertson,* 630 F.2d 139, 147 (3d Cir.1980) (same) *with Gonzales v. National*

*Broad. Co.,* 155 F.3d 618, 626 (2d Cir.1998) (holding that no qualified reporter's privilege exists for nonconfidential information) *and United States v. Smith,* 135 F.3d 963, 972 (5th Cir.1998) (same).

valuable time, decreasing to that extent resources available for news reporting. Yet in the immediate sense, the press here is not differently situated from any other business that may find itself possessing evidence relevant to a criminal trial. It has a relevant and protectible interest in not being unduly burdened, as, for example, by overly broad subpoenas for large amounts of data of dubious relevance.") (*quoting United States v. Smith,* 135 F.3d 963, 970 (5th Cir.1998)).

### Conclusion

Reuters has failed to demonstrate that the subpoena in this action is overly broad, and that it would be unduly burdened in complying with the four narrow branches of the subpoena. Accordingly, the motion to compel is granted as to first, third, and fourth branches of the subpoena. To the extent that Reuters has what it deems to be confidential information responsive to requests three and four, Reuters is directed to submit a privilege log identifying such material.[4]

---

4. At oral argument, Reuters asserted that it had not investigated whether it had any confidential

materials that would satisfy the third or fourth branches of the subpoena.