**Catherine LEGO, as representative of the shareholders of Tsunami Optics, Inc., et al., Plaintiffs,**

v.

**STRATOS LIGHTWAVE, INC., Defendant.**

**No. M8–85.**

United States District Court, S.D. New York.

Nov. 4, 2004.

seeking discovery concerning defendant Stratos Lightwave, Inc. ("Stratos"),[1] a client of E & Y's accounting business. The matter turns on whether and to what extent the Illinois accountant's privilege applies here.

*Facts*

### A. The Parties' Claims

The plaintiffs were founders of and investors in Tsunami Optics, Inc. ("Tsunami"), a California-based enterprise in the fiber optics industry. In 2002, Tsunami merged with a Stratos subsidiary in a transaction in which the securities of Tsunami were converted into a right to receive securities of Stratos as well as post-merger payments in Stratos securities in amounts that were to be a function of the average trading price of Stratos common stock during a defined period following the merger. Plaintiffs subsequently commenced this action, claiming that Stratos has mismanaged the Tsunami subsidiary, and thereby interfered with the Tsunami shareholders' rights under the merger agreement, and that Stratos induced plaintiffs to enter into the transaction by misrepresenting its financial condition.

Stratos in turn counterclaimed. It contends, among other things, that plaintiffs fraudulently induced it to enter into the transaction by misrepresenting Tsunami's current and anticipated financial condition as well as its product development schedules. The parties rely exclusively on state law for the rules of decision governing their claims save that one of Stratos' five claims for relief on its counterclaim is based on Section 10(b) of the Securities Exchange Act of 1934[2] and Rule 10b-5 thereunder.[3]

### B. The Disputed Discovery

E & Y was Stratos' outside auditor. In June 2003, plaintiffs served on E & Y's New York headquarters a subpoena issued by this Court which seeks to compel deposition testimony and the production of a broad variety of documents relating generally to the parties' agreement, E & Y's activities on behalf

Michael T. Stolper, Kenneth P. Herzinger, James E. Burns, Jr., Erin L. Bansal, Orrick, Herrington & Sutcliffe LLP, for Plaintiffs.

Grant J. Esposito, Ryan P. Farley, Mayer, Brown, Rowe & Maw LLP, New York City, for Non–Party Ernst & Young LLP.

### MEMORANDUM OPINION

KAPLAN, District Judge.

The plaintiffs in this action, which is pending in the Northern District of California, move to compel non-party Ernst & Young LLP ("E & Y") to comply with a subpoena

---

1. Stratos Lightwave, Inc. is the corporation's former name. It is now named Stratos International, Inc. Slack Aff. ¶ 3.

2. 15 U.S.C. § 78j.

3. 17 C.F.R. § 240.10b-5.

of Stratos such as due diligence on the Tsunami transaction, Stratos' financial condition, analyses of Tsunami's financial condition, and other matters.

E & Y objects to the subpoena on the ground that the requested information is protected from disclosure by the Illinois accountant's privilege. The plaintiffs counter that privilege with respect to the subject matter of this subpoena should be determined in accordance with federal, not state, law and that even if state law does apply, the Court should apply California or New York law, neither of which recognizes a privilege for accountants. They seek an order compelling compliance with the subpoena.

*Discussion*

*A. Overview*

Federal Rule of Evidence 501 provides that privileges in federal courts are governed by federal common law except that in civil cases, "with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness [or] person ... shall be determined in accordance with State law." In a diversity case, this rule "requires the application of the state law of privileges, except where the proof is directed to an issue that is governed by federal law." [4]

■ To the extent that the discovery requested in this case is relevant to the federal counterclaim (or to a defense based on federal law), or to both federal and state claims, privileges are determined in accordance with federal law. This rule is consistent with the established principle that when federal jurisdiction is based on the existence of a federal question, but the case includes pendent state law claims arising out of the same events, federal law governs privileges.[5] To the extent, however, that the discovery requested in this case is relevant only to state claims and defenses, privilege is determined by the applicable state law.[6]

*B. Choice of Law*

■ Having determined that state privilege law governs all evidence sought except that which would be relevant to plaintiffs' defense against Stratos' federal counterclaim, the next step is to determine the state the law of which controls.

Under New York's choice of law principles,[7] the governing law is that " 'of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.' " [8] In this case, the only states that have a plausible concern with the privilege issue are Illinois and California.

---

**4.** 23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR, FEDERAL PRACTICE AND PROCEDURE § 5433 (1980). *See also id.* (quoting Conference Committee Report at 7–8): "Under the provision in the [version of the bill that passed], state privilege law will usually apply in diversity cases. There may be diversity cases, however, where a claim or defense is based upon federal law. In such instances, federal privilege law will apply to evidence relevant to the federal claim or defense."

**5.** *E.g., von Bulow v. von Bulow,* 811 F.2d 136, 141 (2d Cir.1987); *In re Ramaekers,* 33 F.Supp.2d 312, 315 (S.D.N.Y.1999); *see also Baker's Aid v. Hussmann Foodservice Co.,* No. CV 87–0937(JMM), 1988 WL 138254, at *3 (E.D.N.Y. Dec. 19, 1988) (applying federal attorney-client privilege law to a document relevant to the sole federal counterclaim in a diversity case).

**6.** *See Platypus Wear, Inc. v. K.D. Co.,* 905 F.Supp. 808, 812 (S.D.Cal.1995) (state privilege law applicable in diversity case with a federal counterclaim because requested discovery was relevant only to state law claims).

**7.** A federal court applies the choice of law rules prevailing in the state in which the court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). "[W]here the court hearing the discovery dispute and the court hearing the underlying action differ, the court hearing the discovery dispute must apply the choice of law rules of its forum." *Wolpin v. Philip Morris Inc.,* 189 F.R.D. 418, 423 (C.D.Cal.1999); *accord Microsoft Corp. v. Fed. Ins. Co.,* No. M8–85 (HB), 2003 WL 548758, at *2 n. 1 (S.D.N.Y. Feb.25, 2003); *Tartaglia v. Paul Revere Life Ins. Co.,* 948 F.Supp. 325, 326 (S.D.N.Y.1996); *Connolly Data Sys., Inc. v. Victor Techs., Inc.,* 114 F.R.D. 89, 91 (S.D.Cal.1987).

**8.** *Tartaglia,* 948 F.Supp. at 326 (quoting *Babcock v. Jackson,* 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279 (1963)); *accord Microsoft Corp.,* 2003 WL 548758 at *2 n. 1; *Satcom Int'l Grp. v. Orbcomm Int'l Partners,* No. 98 Civ. 9095(DLC), 1999 WL 76847, at *1 (S.D.N.Y. Feb.16, 1999).

Stratos' headquarters are in Illinois. All or substantially all of E & Y's audit work was performed in that state.[9] California, on the other hand, is the location of the forum of the underlying action as well as the plaintiffs' home state and the state the substantive law of which will govern most of the claims in this case. Thus, California too has a material interest in application of its law.

In cases requiring a choice of privilege law, the interest analysis usually has led New York courts to apply the law of the jurisdiction in which the assertedly privileged communications were made, which in most of the cases was also the jurisdiction in which the party that made the communications resided.[10] The most common rationale is that the parties who made the communications expected that those communications would remain confidential under the law of that jurisdiction, and the state has an interest in furthering the policies behind the privilege at issue.

Two cases have come out differently, but each is distinguishable. In *First Interstate Credit Alliance, Inc. v. Arthur Andersen &*

*Co.*,[11] the Appellate Division refused to apply Maryland's accountant-client privilege to the defendant accounting firm's Maryland-based audit of a Maryland client that had transacted business with the plaintiff, a New York corporation. In that case, however, the action contended that the audit reports were prepared for the purpose of assisting the client in procuring financing from a New York lender and that they had been used to perpetrate a fraud. Taking all factors into account, the court concluded that New York's interest in getting to the truth concerning the alleged fraud outweighed Maryland's interest in protecting the accountant-client communications at issue. In this case, by contrast, there is no suggestion that any of E & Y's work was undertaken to further a fraud by Stratos.

In *Bamco 18 v. Reeves*,[12] Bamco 18, an investor in a defendant limited partnership known as Hospitality, sued Hospitality and several of its principals, including one Reeves, for fraudulently inducing its investment. It sought production by Reeves of

9. Wilson Decl. ¶¶ 3–6. E & Y concedes that "[l]imited field work may have been performed in California" in regard to Stratos' Tsunami subsidiary. *Id.* ¶ 5. The Court need not consider whether the Illinois privilege would apply to documents generated in connection with this field work because, as discussed below, privilege for any discovery pertaining to Tsunami after the merger is determined in accordance with federal law.

10. *Satcom Int'l*, 1999 WL 76847, at *1 (applying Virginia's law of attorney-client privilege because the communications at issue were between the defendant, a Virginia limited partnership, and its general counsel at the defendant's Executive Committee meeting); *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97 Civ. 4978(LMM) HBP, 1999 WL 61442, at *6 (S.D.N.Y. Feb.3, 1999) (communications in issue were not protected by an attorney-client privilege because Lebanon, which is where the attorney and client were located and where the communications took place, does not recognize an attorney-client privilege); *Tartaglia*, 948 F.Supp. at 326 (New York law of privileges applied to the plaintiff's health records, which were created and maintained in New York by a New York corporation and concerned a doctor practicing in New York); *Mazzella v. Philadelphia Newspapers, Inc.*, 479 F.Supp. 523, 527 (E.D.N.Y.1979) (applying Pennsylvania's newsman's privilege in defamation suit where defendants were a Pennsylvania-based

newspaper and journalist, and the confidential communications between sources and reporter apparently occurred in Pennsylvania); *Doe v. Roe*, 190 A.D.2d 463, 469–70, 599 N.Y.S.2d 350, 352–53 (4th Dep't 1993) (propriety of disclosure of plaintiff's HIV status to plaintiff's Pennsylvania employer by a physician in New York should be determined according to New York law because the treatment occurred in New York, an alleged promise to preserve confidentiality was made in New York, and the *disclosure occurred* from the physician's New York office); *Brandman v. Cross & Brown Co. of Fl.*, 125 Misc.2d 185, 186, 479 N.Y.S.2d 435, 436–37 (Sup.Ct. Kings Co.1984) (applying New York law to claim of privilege for bills issued by a New York attorney to a corporation with a Brooklyn address, even though the partnership agreement being sued on was made by New York and Florida entities for the purpose of developing real estate in Florida, and Florida law might govern other aspects of the controversy); *see also Microsoft Corp.*, 2003 WL 548758 at *2 n. 1 (applying Washington law to question of whether plaintiff, a Seattle-based corporation, had waived a privilege for materials created and held by plaintiff's law firm throughout the United States).

11. 150 A.D.2d 291, 293, 541 N.Y.S.2d 433, 434–35 (1st Dep't 1989).

12. 685 F.Supp. 414 (S.D.N.Y.1988).

accountants' documents concerning one of Reeves' ventures, a Maryland limited partnership known as Laurel. Reeves resisted, invoking Maryland's accountant-client privilege.

Judge Sweet determined that "the only contact with Maryland is that a limited partnership [Laurel] from which documents are sought is located there."[13] Moreover, Laurel's general partner was a New Hampshire corporation and Reeves himself, who was both the owner of the general partner and himself a limited partner in Laurel, also was domiciled in New Hampshire. The accounting firm that prepared the documents was from Boston. Thus, neither the putative client—really Reeves—nor the accountant had any substantial connection to Maryland. The Court therefore rejected application of the Maryland privilege law.

*Bamco 18* bears no similarity to this case. Here the accounting work and the client both were in Illinois, the state whose law is said to apply.

Accordingly, this Court holds that the accountant's privilege of Illinois governs this action to the extent that state law supplies the rule of decision as to privilege.

### C. Application of the Illinois Accountant's Privilege

Determination of the extent to which the discovery sought by plaintiffs is privileged requires two steps. The Court first must determine what discovery relates to the plaintiffs' defense against Stratos' federal securities law counterclaim, for the Illinois privilege does not apply to those requests at all. It then must decide which of the remaining documents come within the scope of the Illinois privilege.

### 1. Documents Relevant to Defense against the Federal Claim

■ The sole federal counterclaim alleges that the plaintiffs made misrepresentations during the negotiations that led to the merger agreements,[14] including "false, unrealistic and unachievable" projections about Tsunami's future revenues.[15] The plaintiffs argue that they can defend against this claim in several ways, including by arguing "that Tsunami met the financial benchmarks Plaintiffs set forth in negotiations" and "that Tsunami came close to meeting those financial benchmarks but fell short because of interference by Stratos."[16] Thus, documents relating to Tsunami's performance after the acquisition by Stratos would be relevant to the defense of Stratos' 10b–5 counterclaim. By contrast, documents concerning only Stratos' overall financial condition and performance cannot help the plaintiffs defend against the claim that they made misrepresentations about Tsunami in the course of negotiations.

Because federal law does not recognize a privilege for accountants,[17] E & Y must comply with the subpoena to the extent that it demands information about Tsunami after Tsunami came under Stratos' ownership.

### 2. Applicability of the Illinois Privilege to the Remaining Documents

■ Section 27 of the Illinois Public Accounting Act[18] provides:

"A licensed certified public accountant shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity as a public accountant."

The statute's protection extends at least to an accounting firm's work papers and to confidential communications between the accounting firm and the client in connection with an audit.[19] The statute has been found

13. *Id.* at 416.

14. Countercl. ¶ 65.

15. *Id.* ¶ 15.

16. Reply Mem. 5. The plaintiffs argue also that they can assert a defense of unclean hands. *Id.* State law supplies the rule of decision for that defense, however, and therefore privilege for any evidence bearing on this defense is determined in accordance with state law.

17. *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

18. 225 ILL. COMP STAT. ANN. 450/27 (2004).

19. *See FMC Corp. v. Liberty Mut. Ins. Co.,* 236 Ill.App.3d 355, 358–60, 177 Ill.Dec. 646, 603 N.E.2d 716, 718–19 (1st Dist.1992) ("Communications and documents which were transmitted only between FMC and Peat Marwick are not subject to disclosure").

inapplicable to, among other things, nonfinancial work such as quality control assessments,[20] "documents that have previously been filed with third parties and any claims or communications received from third parties,"[21] and "an accountant's views concerning matters of financial disclosure."[22]

There is no real dispute that much of the requested discovery falls within the scope of Section 27. The plaintiffs have demanded from E & Y mostly documents that reflect financial information that Stratos provided to the accounting firm. E & Y has represented that "[a]ll of the audit workpapers are maintained in a confidential fashion."[23]

■ The plaintiffs do dispute that Section 27 applies to the minutes of meetings of Stratos' Board of Directors and its subcommittees.[24] The Court agrees; the record of a meeting does not appear to qualify as information obtained by an accountant in a confidential capacity.

Furthermore, certain additional information requested by the plaintiffs may not be privileged. For example, correspondence with a third party does not qualify for Section 27 protection. E & Y must comply with the subpoena insofar as the requested discovery falls outside the protection of Section 27.

### Conclusion

The plaintiffs' motion to compel E & Y to comply with the June 24, 2003 subpoena is granted to the extent that E & Y (a) on or before November 18, 2004, shall produce the documents described in Document Requests 2, 9, 11, 12, 13, 16 insofar as those documents contain information about events after the acquisition of Tsunami by Stratos, and 17, (b) shall testify, pursuant to the Rule 30(b)(6) notice of deposition, on such date as may be agreed upon by the parties or fixed by the Court, with respect to the subjects described in paragraphs 6, 12, and 13 thereof to the extent of information about events after the acquisition of Tsunami by Stratos, and (c) shall produce any other documents described in the request for documents that do not contain information that has been obtained by a licensed certified public accountant in that accountant's confidential capacity. The motion is denied in all other respects.

SO ORDERED.

---

20. *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP,* 305 F.3d 813, 816 (8th Cir.2002).

21. *FMC Corp.,* 236 Ill.App.3d at 359, 177 Ill.Dec. 646, 603 N.E.2d at 719; *see also In re October 1985 Grand Jury No. 746,* 124 Ill.2d 466, 477, 125 Ill.Dec. 295, 530 N.E.2d 453, 458 (1988) (Section 27 privilege does not apply to "[i]nformation given an accountant to prepare a client's tax returns and the accountant's workpapers in preparing the returns"; confidentiality does not attach to such information because it is given to the accountant "with the understanding that there may be ... a disclosure of it to a third party, the State, or other parties").

22. *See CNR Invs., Inc. v. Jefferson Trust & Sav. Bank of Peoria,* 115 Ill.App.3d 1071, 1075, 71 Ill.Dec. 612, 451 N.E.2d 580, 583 (3d Dist.1983).

23. Wilson Decl. ¶ 6.

24. Reply Mem. 13. The plaintiffs claim also that the privilege does not extend to "any financial schedules, any correspondence between Stratos and/or E & Y and the SEC, or any correspondence between Stratos and/or E & Y and Stratos' bankers, vendors or customers." *Id.* The plaintiffs have not specified what they mean by "any financial schedules." To the extent that E & Y's files reflect financial information furnished by Stratos in confidence, the documents are protected under Illinois law. As for "correspondence," the subpoena requests "all communications between Stratos and Ernst & Young." Notice of Subpoena 6 ¶ 5. As discussed above, such correspondence is protected. The subpoena does not appear to request, at least not directly, correspondence with either the SEC or Stratos' bankers, vendors, and customers.