DONE this 9th day of December, 1991.

Peter P. ANAS, et al., Plaintiffs,

v.

Ronald BLECKER, Defendant.

No. 85–1364–CIV–21A.

United States District Court,
M.D. Florida,
Tampa Division.

April 3, 1992.

John P. Graves, Jr. and William T. Kirtley, for plaintiffs.

John W. Wilcox, Sharon L. Stock and Jesse L. Skipper, for defendant.

## ORDER

WILSON, United States Magistrate Judge.

THIS CAUSE is before the Court upon Defendant Blecker's Emergency Motion for Protective Order (doc. 557). The Court, having considered the motion and the responses thereto, and being otherwise fully advised in the premises, finds as follows:

1. The Defendant's motion for protective order seeks to prevent the Plaintiffs from deposing a representative of the Appraisal Institute ("Institute"), *in Illinois,* and compelling the production of confidential Institute files and records regarding disciplinary proceedings stemming from complaints against Defendant Blecker filed with the Institute. The Institute contends that the disciplinary proceedings, and documents relating to these proceedings, are privileged.

1. The Court has carefully considered the Notes of the Committee on the Judiciary, Senate Report No. 93–1277, which indicate that the federal law of privileges should be applied with respect to pendent State law claims when they arise in a federal question case. However, the

*Federal Rule of Evidence 501*

■ 2. Since the motion raises the question of whether a privilege applies to the requested testimony and production, Federal Rule of Evidence 501 controls. The rule provides in pertinent part:

■n civil actions and proceedings, with respect to an element of a claim or defense *as to which State law supplies the rule of decision,* the privilege of a witness, person, government, State, or political subdivision thereof *shall be determined in accordance with state law.*

Fed.R.Evid. 501 (emphasis added).

3. This subpoena arises out of a *state law fraud action,* involving the sale of a limited partnership interest in thirty properties. Multiple plaintiffs brought suit against multiple defendants, including Ronald Blecker. The case was tried to a verdict, and judgment was entered in favor of Blecker. Dismissal of the federal securities laws claims was affirmed on appeal. On remand, after appeal, *all that remains are Plaintiffs' state law claims* and it is clear that state law will supply the rule of decision. Pursuant to Federal Rule of Evidence 501, the Court will apply state law to resolve the privilege issue.[1]

*Florida's Choice of Law Rules*

■ 4. The Court must next determine which state's choice of law rules apply. "In determining the applicable law, a federal court hearing a non federal claim must apply the law of the State in which it sits, *including the State's choice of law rules.*" *Civic Assocs. v. Security Ins. Co.,* 749 F.Supp. 1076, 1079 (D.Kan.1990) (emphasis added); *S.E.C. v. Elmas Trading Corp.,* 683 F.Supp. 743, 748 (D.Nev.1987); *Abston v. Levi Strauss & Co.,* 684 F.Supp. 152, 154 (E.D.Tex.1987); *Bi–Rite Enters. v. Bruce Miner Co., Inc.,* 757 F.2d 440, 442 (1st Cir.1985). Florida's choice of law rules therefore control.

Court concludes that, for the reasons set forth in this Order, the unique procedural posture of this case and the underlying policy considerations support the Court's application of state law when deciding the privilege issue.

■ 5. The Court notes that the Florida courts have consistently applied the Restatement (Second) of Conflict of Laws in other tort cases where a choice of law issue has arisen. *See, Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999 (Fla.1980); *Proprietors Ins. Co. v. Valsecchi*, 435 So.2d 290 (Fla. 3d DCA 1983); *Hertz Corp. v. Piccolo*, 453 So.2d 12 (Fla.1984); *Stallworth v. Hospitality Rentals, Inc.*, 515 So.2d 413 (Fla. 1st DCA 1987), *Jones v. Cook*, 587 So.2d 570 (Fla. 1st DCA 1991).

Other federal courts have also depended upon Section 139 of the Restatement to resolve choice of law questions relating to privileges. *See, Mazzella v. Philadelphia Newspapers, Inc.*, 479 F.Supp. 523 (E.D.N.Y.1979); *Independent Petrochemical v. Aetna Casualty and Sur. Co.*, 117 F.R.D. 292 (D.D.C.1987); *Bamco 18 v. Reeves*, 685 F.Supp. 414 (S.D.N.Y.1988).

6. Section 139(2) Restatement (Second) of Conflict of Laws provides:

(2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted *unless there is some special reason why the forum policy favoring admission should not be given effect.*

(emphasis added). The Institute is a voluntary association of real estate appraisers, and *an Illinois non-profit corporation,* that regulates appraisers from all over the United States. The Court finds that it would be against public policy to apply the law of the state of residence of the appraiser, or the state where litigation is pending, in deciding issues relating to the Society's internal rules, regulations and policies. Such a rule would subject the Institute to the privilege laws of all fifty states. The possibility of conflicting decisions in different states would impair the Institute's ability to conduct peer review and disciplinary proceedings. For these reasons, the Court finds that a special reason exists not to give effect to the Florida policy favoring admission. As explained below, the comment to Section 139 also supports this decision.

7. Comment (e) to Section 139 explains that the "state with the most significant relationship will usually be the state where the communication took place, which as used in the rule of this Section, is the state where an oral interchange between persons occurred, where a written statement was received, or where an inspection was made of a person or thing." Since the disciplinary proceeding was held in Illinois, and the communications involved in the disciplinary proceeding were given and received in Illinois, the Court finds that Illinois is the state with the most significant relationship with the communications at issue.

8. Comment (d) to Section 139 explains that

The forum will admit evidence that is not privileged under its local law but is privileged under the local law of the State which has the most significant relationship with the communication, *unless it finds its local policy favoring admission of the evidence is outweighed by countervailing considerations.* Among the factors the forum will consider in determining whether or not to admit the evidence are (1) the number and nature of the contact that the forum state has with the parties and with the transaction involved, (2) the relative materiality of the evidence that is sought to be excluded, (3) the kind of privilege involved, and (4) fairness to the parties.

(emphasis added). Factors (2) and (4) are critical to the Court's resolution of this matter.

9. The comment's discussion of factor (2), the relative materiality of the evidence sought, indicates that the forum will be more likely to give effect to the foreign privilege if the evidence would "be unlikely to affect the result of the case *or could be proved in some other way."* (emphasis added)

The Court finds that the evidence sought in the subpoena is duplicative and therefore not material to the outcome of this case. This finding is based upon Plaintiffs' own statement that "Plaintiff wants to verify and expand known information." *Pl.'s Resp. to Ct.'s Req. for Mem. on Conflict of*

*Laws Question and to Deponents Supplementing Mem.* (doc. 564) at 11.

Further, the "censure" or public reprimand given by the Institute against Blecker lists the specific rules which Blecker violated. Thus, the Plaintiffs can refer to the rules and know the specific violations the Institute concluded Blecker had committed.

10. In assessing the fairness to the parties, factor (4), the comment emphasizes that the forum court will be more likely to give effect to the foreign privilege if it was *relied upon by the parties.* The parties need not know of the existence of the specific legal privilege; it is sufficient if the communications were made in reliance on the fact that communications of the sort involved are treated in strict confidence in the state of the most significant relationship.

This Court concludes that the statements made to the Institute and the record generated by the disciplinary proceeding, were made in reliance on the strict confidentiality policy of the Institute. *See* Complaint Report Form, Exhibit A, to the Supplemental Aff. of Sheryl L. Trotz, which states on the top of the form that "all information furnished will be treated in strict confidence." *See also* Institute's Internal Rules 7.2210 and 7.105, Exhibits A–D to the Aff. of Sheryl L. Trotz, which provide that "all correspondence, records, transcripts, exhibits, conversations and any information generated as a result of the Professional Practice Complaint, *shall be deemed strictly confidential.*" Further, the rules provide that "censure" (a published reprimand) will not affect the confidentiality policy.

11. The comment also explains that a further consideration in assessing the question of fairness is whether the privilege belongs to a person who is *not a party to the action,* as in this case. If it is a privilege asserted by a nonparty, the forum "will be more inclined to recognize the privilege and to exclude the evidence."

12. Having weighed the Restatement factors, the Court finds that Illinois law should control the privilege issue. *See also In re Westinghouse Elec. Corp. Uranium*

*Contracts Litig.,* 76 F.R.D. 47, 53–54 (W.D.Pa.1977) (reaching the same conclusion in a similar factual situation).

### Illinois Privilege Law

■ 13. The controlling Illinois decision on the privilege issue is *Petition of Illinois Judicial Inquiry Board,* 128 Ill.App.3d 798, 84 Ill.Dec. 72, 471 N.E.2d 601 (1984). This case recognizes a privilege for *confidential communications given in a peer review setting.* The Illinois court, relying on Wigmore's Evidence treatise, sets forth the following requirements for the privilege:

(1) The communication must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of the litigation.

8 Wigmore, Evidence, Section 2285 (emphasis in original).

[5] 14. The Court finds the Affidavit, and Supplemental Aff. of Sheryl L. Trotz, and the attached Exhibits (addressed above) satisfy the first two prongs of the privilege test. *See* ¶ 5(a)–(f) in the Supplemental Aff. (doc. 561) (indicating why the confidentiality is essential to the full and satisfactory maintenance of the relation between the parties).

15. The Court further finds that prong (3) of the privilege test is also met in this case. As alluded to in *Illinois Judicial Inquiry Board,* peer review is in the public interest because those who are members of the same profession are the best persons to evaluate one another's professional activities. Regulation of a professional group is also in the public interest because it allows the peer group to *inform the public* when

its members are not carrying out their professional duties in a manner acceptable to the profession. This peer review function, as performed by the Institute, allows the public to make an informed decision when choosing a professional, and this function that should be sedulously fostered by the community.

16. Prong (4) of this test is also satisfied. As indicated above, the evidence sought is duplicative and is therefore not of significant benefit to the Plaintiffs' case. Further, the evidence sought could substantially injure the Institute by undermining its policies and procedures.

17. Plaintiff argues that the Institute waived its privilege when it censured Blecker because it disclosed the outcome of its disciplinary proceedings. The Court disagrees. The censure did not waive the privilege because it revealed only Blecker's name, his city of residence, and the sections of the Institute's rules which he violated. The censure did not disclose the internal information gathered, the names of the persons giving the information, or any other details of the Institute's investigation into the charges against Blecker.

Based on the foregoing, it is

ORDERED that Defendant's Emergency Motion for a Protective Order is GRANTED.

DONE and ORDERED.